ROBERT THEOBALD, PLAINTIFF-RESPONDENT, v. LEON ANGELOS AND CHERRY HILL TOWNSHIP, DEFEND-ANTS-APPELLANTS.

Argued November 17, 1964—Decided March 15, 1965.

230

*Mr. Samuel P. Orlando* argued the cause for appellants.

*Mr. Frank E. Vittori* argued the cause for respondent (*Mr. John H. Reiners, Jr.*, attorney).

The opinion of the court was delivered by

WEINTRAUB, C. J. Plaintiff, Theobald, was severely injured in an automobile accident. Before trial he settled with two defendants. We are here concerned with the effect of those settlements upon the liability of the remaining defendant.

This litigation was before us in *Theobald v. Angelos,* 40 *N. J.* 295 (1963). As related in that opinion, the car of defendant Anderson went out of control and came to rest partly in the street and partly upon property of plaintiff. Defendant Angelos, a police officer of defendant Delaware Township, parked his police car behind Anderson's. While plaintiff was standing between these vehicles, defendant Conaty struck the rear of the police car, driving it forward and thereby crushing plaintiff. Just before trial plaintiff settled with Anderson for $1,500 and with Conaty for $88,500. The trial resulted in a judgment for $65,000 against Angelos and the municipality. (The municipality and its servant Angelos are a single tortfeasor for the purposes of the contribution statute, *N. J. S.* 2A:53A–1; we will refer to them hereafter as "Angelos" or "the defendant.")

Both Angelos and plaintiff appealed, Angelos complaining of the trial court's refusal to find the settlements with the co-defendants operated to satisfy the judgment, and plaintiff complaining the jury had been misled into returning a verdict for but part of the total damages. We ordered a retrial as to damages only and reserved for later consideration in the light of a new verdict the issues as to the effect of those settlements.

Upon the retrial the jury found total damages of $165,000. The trial court thereupon decided the reserved matters this way :

(1) Angelos contended the fact of settlement with Anderson conclusively established Anderson a co-tortfeasor and hence there should be a three-way division, reducing Angelos' share to $55,000. Plaintiff contended that Anderson was not a tortfeasor because the jury in the first trial found he was not, and hence the total figure of $165,000 should be divided between Conaty and Angelos, the parties the jury found to be

at fault. The trial court accepted plaintiff's position and reduced the share of Angelos to $82,500, but then applied upon that amount the sum of $1,500 paid by Anderson to plaintiff, leaving a net liability of $81,000. This so-called *"pro tanto"* credit of $1,500 is not challenged by plaintiff upon this appeal.

(2) Angelos contended alternatively that there should be applied to the total figure ($165,000) the full amount received from Conaty ($88,500) in addition to the sum received from Anderson ($1,500), leaving Angelos liable only for the balance of $75,000. The trial court accepted plaintiff's response that a joint tortfeasor who receives a *pro rata* credit because of the discharge of his co-obligor has no interest in whether the plaintiff did well or poorly in settling with the co-obligor.

Angelos appealed from this disposition of those issues and we certified the appeal before argument in the Appellate Division.

 The issues must be considered in the context of our contribution statute as construed in *Judson v. Peoples Bank & Trust Co.*, 17 *N. J.* 67 (1954), and *Judson v. Peoples Bank & Trust Co.*, 25 *N. J.* 17 (1957). Those cases hold that a settlement with a joint tortfeasor, even though for less than a *pro rata* share of the total claim, nonetheless (1) reduces the total claim by the *pro rata* figure and (2) bars an action for contribution against the settling wrongdoer.

I.

The first question is whether for the purposes of the contribution statute Anderson must be deemed a tortfeasor because plaintiff settled with him.

 As stated before, the jury at the first trial found that Anderson was not culpably involved. Angelos complains, at least incidentally, that the issue of Anderson's fault was not fairly litigated. We think it was. Angelos had cross-claimed for contribution against both Anderson and Conaty. It is

agreed the trial court and counsel were aware of the then recent case of *Hoeller v. Coleman,* 73 *N. J. Super.* 502 (*App. Div.* 1962), certification later denied in 38 *N. J.* 362 (1962). There the Appellate Division held that whether a settling party is a tortfeasor is a triable issue of fact, and that if he is not, the only credit which a culpable defendant may have is in the actual sum the settlor paid. We have no doubt that Angelos understood the issue of negligence on the part of Anderson and Conaty was being tried. The jury's finding on the interrogatory submitted to it, that Anderson was not a tortfeasor, was fairly reached and should be accepted.

We proceed then to defendant's proposition that the naked fact of a settlement should establish his right to a *pro rata* reduction, however nominal the payment and however innocent of wrong the payor may be. Here, of course, plaintiff had no thought of accepting a mere $1,500 in satisfaction of a third of his heavy losses. We should not surprise him with that result unless we must. Surely there is no room for defendant's claim of estoppel; he had the same full opportunity to press his claim for contribution whether Anderson settled or not. Rather defendant would enjoy a windfall if we found that plaintiff stumbled over a misconception of law. The injustice would be so evident that equity might well relieve plaintiff of the settlement because of his mistake, a result which could not harm Anderson in view of the jury's verdict exculpating him. In any event, we agree with the holding of *Hoeller, supra,* 73 *N. J. Super.* 502, that a *pro rata* reduction will not be ordered if the party to the settlement was not in fact a tortfeasor.

The issue is now before us for the first time. In *Klotz v. Lee,* 36 *N. J. Super.* 6 (*App. Div.* 1955), plaintiff agreed to accept $12,500 from one defendant without regard to the jury's verdict and agreed to collect no more than 50% of the verdict from the codefendant if the verdict ran against both. The jury returned a verdict of $35,000 against the nonsettling defendant alone. The trial court ordered $12,500 to be applied on the amount of the verdict. The Appellate Division

affirmed. It is not clear from its opinion that the precise issue before us was pressed. Certification was denied, *Klotz v. Breish,* 19 *N. J.* 334 (1955), and an appeal was dismissed, *Klotz v. Lee,* 21 *N. J.* 148 (1956). In *Judson v. Peoples Bank & Trust Co., supra,* 25 *N. J.,* at *p.* 34, we noted that no one questioned the finding that one of the settling parties (Peoples Bank) was a tortfeasor. We so noted out of an awareness of the issue now before us. In *Oliver v. Russo,* 29 *N. J.* 418, 420 (1959), the appellant sought to present the question but did so for the first time on appeal, asking for a remand to try the issue of the negligence of the settling party. We declined to accept the question in that posture of the case, and cited without comment *Davis v. Miller,* 385 *Pa.* 348, 123 *A.* 2d 422 (*Sup. Ct.* 1956), and *Swigert v. Welk,* 213 *Md.* 613, 133 *A.* 2d 428 (*Ct. App.* 1957), both of which held under the contribution law of those States that a defendant was entitled to *pro rata* credit only if the settling party was in fact a tortfeasor.

In *Hoeller v. Coleman, supra,* 73 *N. J. Super.* 502, the Appellate Division reviewed the prior cases and, as we have already said, held that where the jury found the settling defendant was not a party to the wrong, the culpable defendant could not claim a *pro rata* abatement because of that settlement but was entitled to a *pro tanto* reduction in the amount the settlor paid. The Appellate Division referred also to *Steger v. Egyud,* 219 *Md.* 331, 149 *A.* 2d 762 (*Ct. App.* 1959), where in a case involving New Jersey law the Court of Appeals reached the same conclusions on a review of the decisions in our State. We denied certification in *Hoeller,* 38 *N. J.* 362 (1962). We add that in *Hoeller* the Appellate Division declined to follow *Smootz v. Ienni,* 37 *N. J. Super.* 529 (*Cty. Ct.* 1955), in which the trial court, upon a motion which plaintiff did not resist, seemingly held that a settlement leads to a *pro rata* reduction without regard to the payor's negligence. The trial court in *Smootz* did not refer to *Klotz, supra,* 36 *N. J. Super.* 6, which had been decided by the Appellate Division a few months before.

██ Our Joint Tortfeasors Contribution Law, *N. J. S.* 2A:53A–1 *et seq.*, (enacted in 1952) does not direct that credit be given if there is a settlement with one who is not in fact a tortfeasor. Literally at least, the statute calls for an adjustment only if the payor was a party to the wrong. *N. J.S.* 2A:53A–1 defines "joint tortfeasors" to mean two or more persons jointly or severally "liable in tort," and it is a payment by one such person which brings the statute into play. Hence if a settlement is to have the consequences defendant demands, the basis for that result must be found outside the language of the statute itself.

We find no support for defendant's position in our cases prior to the statute. If anything, they tend the other way. We refer to cases dealing with two rules of great antiquity which likely developed because the early common law could not achieve contribution among co-obligors. One rule was that a claimant could have but one satisfaction. The other was that the release of one co-obligor released all without regard to intent or satisfaction in fact.

With respect to the one-satisfaction rule, our case law is here equivocal. In *Brandstein v. Ironbound Transportation Co.*, 112 *N. J. L.* 585 (*E. & A.* 1934), it was held that the consideration received for a "covenant not to sue" had to be applied to the liability of other tortfeasors. The discussion throughout was upon the assumption that the payor was a culpable party. At the very end appeared the following paragraph (at *p.* 593):

"That payments by persons not interested in the cause of action, as wrongdoers, are not to be applied in diminution of damages does not lessen the force of the rule here applied. Such payments are not made by reason of any liability to answer for the wrongful act, but grow out of a relationship not connected with the wrongful act complained of. Such payments are by reason of gratuity or contract."

The court may there have had in mind payments received under contractual arrangements such as a policy of accident insurance. But the quoted paragraph could mean that a payment received from one charged by the claimant with wrong-

236

doing will not be applied if in fact the payor was not liable. Dean Prosser so reads *Brandstein* and upon that reading lists New Jersey with the minority jurisdictions on the issue. *Prosser, Torts,* § 46, *p.* 273 (*3d ed.* 1964). That view of *Brandstein* would of course militate against defendant's position in the present case, for if a *pro tanto* reduction may not be had if the payor was free of fault, *a fortiori* the larger *pro rata* reduction should not be allowed in those circumstances.

On the other hand cases in our State decided since *Brandstein* and mentioned above would require a *pro tanto* application even though the payor was not a party to the wrong, and we think correctly so. Still defendant can claim no support therein because that view of the *pro tanto* rule is neutral in this controversy. As to moneys thus received from one charged with wrongdoing, a plaintiff has the sum in hand and there is no evident hardship in reducing his verdict against others by that amount. Indeed, it would rarely be worth the while of the litigants or of the judicial system to try out the question whether the payor was a party to the wrong when only a dollar-for-dollar application is at stake. *Cf. Gelsmine v. Vignale,* 11 *N. J. Super.* 481 (*App. Div.* 1951). So here plaintiff does not bother to pursue the question whether that credit was correctely ordered. Viewed in terms of fairness and utility, that rule is sound.[1] But there is an evident hardship to plaintiff and an equal windfall to defendant if a payment made by one who in truth did not inflict the wrong is used to bail out the one who did on a *pro rata* basis. There is a tremendous difference between a *pro tanto* credit of the $1,500 plaintiff received from Anderson and a *pro rata* reduction of $55,000 for which defendant contends.

Cases dealing with the other rule mentioned above, that the release of one tortfeasor released all without regard to intent

---

[1] Here the trial court applied the entire $1,500 received from Anderson to Angelos' share of $82,500. We do not pass upon the question whether the credit should have been only one-half of $1,500 because there were two culpable parties, Angelos and Conaty.

or satisfaction in fact, support plaintiff's position. That rule no longer obtains in our State, see *Breen v. Peck*, 28 *N. J.* 351 (1958), but when it did, it invited the question whether a release of one who in fact was not a tortfeasor should release those who were. That question parallels the one before us since in both there is the element of surprise to the plaintiff and a windfall to the culpable parties. The issue arose in *Jacowicz v. Delaware, L. & W. R. R. Co.*, 87 *N. J. L.* 273, 277 (*E. & A.* 1915), where the court rested its result on two bases, one of which was that the release rule would not be applied unless in truth there was a joint wrong. That holding has substantial support elsewhere. 2 *Williston, Contracts,* § 338B, *p.* 726 (*Jaeger* 3*d ed.* 1959); *Annotations*, 73 *A. L. R.* 2*d* 403, 417 (1960); 148 *A. L. R.* 1270, 1292 (1944); 124 *A. L. R.* 1298, 1315 (1940); 104 *A. L. R.* 846, 861 (1936); 66 *A. L. R.* 206, 213 (1930); 50 *A. L. R.* 1057, 1093 (1927).

 Thus the history of the subject points against defendant's position. So also does the nature of the right to contribution. Contribution is of equitable origin and stems from the maxim that equality is equity. 2 *Pomeroy, Equity Jurisprudence* (5*th ed.* 1941), § 406, *pp.* 145–146; *Prosser, Torts,* § 47, *p.* 278 (3*d ed.* 1964); 2 *Williston, Contracts,* § 345, *pp.* 763 and 767 (*Jaeger* 3*d ed.* 1959). The equitable right to contribution is a right as among joint tortfeasors not to be burdened with more than a *pro rata* share of the dollar liability jointly incurred. *Judson v. Peoples Bank & Trust Co., supra,* 17 *N. J.,* at *p.* 92. A defendant receives all the benefit the doctrine intends when he pays no more than his *pro rata* share. Our statute seeks to relieve tortfeasors of injustice as among themselves; it would be foreign to its purpose to penalize a plaintiff for a misstep which in truth deprived a tortfeasor of nothing. *Cf. Judson v. Peoples Bank & Trust Co., supra,* 25 *N. J.,* at *p.* 38.

 Nor can support be found for defendant's position in terms of utility. There is a strong policy in favor of settlements. A contribution law should provide the maximum room for settlements with a minimum of unfairness. Under the

approach of our statute, a plaintiff bears the whole burden of a low settlement with a culpable party, for it results in a full *pro rata* reduction of his claim. It is at best risky business for a plaintiff to settle with one of several. Defendant's position would burden the scene still further for it would require a *pro rata* credit even when the payor was not a party to the wrong. If that view were adopted, there of course would never be a settlement with a defendant whose liability is quite remote and who wants to get out of the case. If fairness required this further restraint, it would be another matter, but we see in defendant's proposition nothing but a trap for the unwary.

For whatever it may be worth, we note that defendant's position would not prevail under either the Uniform Contribution among Tortfeasors Act of 1939 or the revision of 1955, 9 *U. L. A.* 233, 1964 pocket part, *p.* 116. In addition to the circumstance that both statutes, as in the case of our own, speak in terms of settlements with persons "liable in tort" (§ 1), the 1939 act leaves the settling tortfeasor liable to the co-tortfeasor unless the settlement expressly provides for at least a *pro rata* reduction and the 1955 act leaves the settling tortfeasor liable for contribution only if the settlement was not in good faith. Under those plans a plaintiff is never chargeable with more than he received unless he agreed to a greater credit. Rather the defendant against whom the judgment runs must sue for contribution, and of course he cannot recover unless he proves contributory fault.

## II.

The second question is whether defendant should pay $81,-000 as ordered below, or $75,000 for which he contends. It will be recalled that the trial court refused to apply to the jury verdict of $165,000 the whole of the sum of $88,500 paid by Conaty. The trial court's thesis was that the contribution statute controls, and that a defendant who pays his *pro rata* share is not aggrieved because a co-tortfeasor paid more.

■ Defendant seeks to invoke the rule that there may be but one satisfaction of a wrong. We note at once that the law does not frown upon a greater satisfaction if there is no threat to the public interest or unfair advantage taken of another. So an injured party may recover fully from a tortfeasor for personal injuries notwithstanding that much of his loss was covered by contractual arrangements, such as for example an accident or life insurance policy. *Long v. Landy*, 35 *N. J.* 44 (1961); *Rusk v. Jeffries*, 110 *N. J. L.* 307 (*E. & A.* 1933). There is no threat to public welfare so long at least as the contractual arrangement is not apt to stimulate a contrived loss. In any event the tortfeasor must discharge his obligation in full; the problem of over-satisfaction in such circumstances concerns only the parties to the contract and perhaps also the State itself.

■ The one-satisfaction rule is equitable in nature and was designed to prevent unjust enrichment. *Prosser, Torts,* § 45, *p.* 267 (*3d ed.* 1964). As we said earlier, it probably came into being at a time when courts of law could not achieve contribution among co-obligors. While the rule remains useful as an instrument for a just result, *Daily v. Somberg*, 28 *N. J.* 372 (1958), the question is whether it should be invoked in a situation in which our contribution statute applies.

Defendant's just liability under our contribution statute, based on the equitable doctrine that equality is equity, is for a *pro rata* share. He, however, seeks to avoid part of his liability because a co-tortfeasor paid more than he had to under the law. If defendant can invoke the one-satisfaction rule, he will enrich himself to the extent of another's over-payment. Hence, as plaintiff correctly puts it, the question is whether it is the plaintiff or the defendant who should be "unjustly" enriched if there in fact is any "unjust" enrichment in this scene.

■ We think plaintiff has the better of the argument in terms of both fairness and utility.

As to fairness, it is difficult to know whether a tort claimant has received more than full satisfaction. There is no precise

measure of the amount of wrong. Even if the trial is as to damages only, successive juries would rarely make the identical appraisal. Nor is there reason to suppose that a jury's evaluation of losses is more accurate than the evaluation made by the parties to the settlement. Surely where liability is contested, the verdict may not reflect the exact worth of the injuries. When the cost of litigation is taken into account, it becomes still more difficult to say that enforcement of the judgment debtor's *pro rata* liability would enrich the plaintiff. In the case at hand we could not find with confidence that the payment of $81,000 instead of $75,000 would in truth enrich plaintiff at all.

But if there is enrichment, it is not at defendant's expense. Defendant does not seek to make Conaty whole but rather to profit from the injustice that Conaty supposedly experienced. If the voluntary agreement between plaintiff and Conaty were thought so to offend public policy as to require redress, the remedy would run to Conaty rather than to a stranger to the bargain. See *McKenna v. Austin*, 77 *U. S. App. D. C.* 228, 134 *F. 2d* 659, 665, 148 *A. L. R.* 1253 (*D. C. Cir.* 1943). We note that after it was held in *Daugherty v. Hershberger*, 386 *Pa.* 367, 126 *A. 2d* 730 (*Sup. Ct.* 1956), that a judgment debtor was entitled to a *pro tanto* credit in excess of a *pro rata* share, the settling tortfeasor succeeded in recovering the difference from the judgment debtor. *Mong v. Hershberger*, 200 *Pa. Super.* 68, 186 *A. 2d* 427 (*Super. Ct.* 1962). We do not cite this case to hold that our statute authorizes an action for contribution by a tortfeasor who pays under an agreement of settlement rather than a judgment. See *Pennsylvania Greyhound Lines, Inc. v. Rosenthal*, 14 *N. J.* 372, 383 (1954). Rather our purpose is to stress that the situs of the equity is not in the nonsettling defendant. He equitably is entitled to relief only if he pays more than his *pro rata* share of the judgment against him. *Sattelberger v. Telep*, 14 *N. J.* 353, 367 (1954).

The same answer emerges when the issue is considered in terms of utility. Under the thesis of our contribution law, a

*pro tanto* credit in excess of a *pro·rata* share would place another obstacle in the way of a voluntary settlement. If a plaintiff settles with a tortfeasor for less than a *pro rata* share, he must lose the difference, and if the settlement exceeds the *pro rata* share as fixed by the amount of the jury's verdict, again he will lose upon a *pro tanto* credit unless the jury's verdict is precisely correct. A plaintiff would not likely risk a settlement if the probable consequences were thus weighted against him.[2] For the same reason a tortfeasor might refuse to join in a total settlement in the belief that the settlement by a co-tortfeasor will yield an advantage under a combination of the *pro rata* and *pro tanto* rules. Further, if a plaintiff does settle with one, he might have to fight a low verdict to which he would otherwise submit in order to escape the impact of a *pro tanto* credit in excess of a *pro rata* share.

For these reasons we think that considerations of utility redound against a *pro tanto* credit in excess of a *pro rata* share. Again, if there were an offsetting gain in terms of fairness, it might be another matter, but as already pointed out, a co-tortfeasor who pays less than his *pro rata* share because another tortfeasor paid more would be enriched at the expense of another.

 To sum up, (1) if a claimant settles with one of several joint tortfeasors, there will be a *pro rata* reduction in the verdict against the remaining tortfeasors, whether the sum received is less or more than a *pro rata* share, and (2) if the claimant settles with one who is charged with the wrong but who in fact is not a party to it, the sum received (not exceeding a *pro rata* share) shall be applied in reduction of the verdict against the culpable parties.

The judgment is affirmed.

---

[2] Again, for whatever it may be worth, we note that neither the 1939 nor the 1955 uniform act would confront a plaintiff with both the *pro rata* and *pro tanto* approaches. Those statutes use the *pro tanto* approach alone unless the parties expressly agree otherwise.

JACOBS, J. (concurring in part). I agree with the Court's disposition except insofar as it results in the award to the plaintiff of a sum in excess of the full amount of damages fixed by the jury. If, as may well be, the excess should not remain with the defendants-appellants, then it would seem more just and equitable to have it go now to the persons who took the course, highly favored in the law, of settling prior to trial. See *Mong v. Hershberger*, 200 *Pa. Super.* 68, 186 *A. 2d* 427 (*Super. Ct.* 1962). It must be borne in mind that, in the fixing of his damages, the plaintiff here received the greatest measure of protection available under our judicial system. Thus we set aside the first jury's verdict of $65,000 and sent the matter back for a new trial limited to the issue of damages alone. We directed that the trial judge clearly inform the jurors that their verdict should represent "full and fair compensation for all the plaintiff's damages arising out of the accident." 40 *N. J.*, at *p.* 308. There is no reason to doubt that the second jury's verdict sympathetically fulfilled this direction. I see no justice in having the plaintiff receive more from those involved in the accident than the $165,000 fixed by the second jury and find no occasion for departing here from the generally accepted principle that one satisfaction in full is enough. See *Breen v. Peck*, 28 *N. J.* 351, 362–363 (1958); *cf. Daily v. Somberg*, 28 *N. J.* 372, 386 (1958); *Moss v. Cherdak*, 114 *N. J. L.* 332, 334 (*E. & A.* 1935); *Brandstein v. Ironbound Transportation Co.*, 112 *N. J. L.* 585, 593 (*E. & A.* 1934); *Spurr v. North Hudson County R. R. Co.*, 56 *N. J. L.* 346, 347 (*Sup. Ct.* 1894); *Steger v. Egyud*, 219 *Md.* 331, 149 *A. 2d* 762, 768 (1959).

I vote to modify.

PROCTOR, J. (concurring in part). I agree with that part of Justice Jacobs' concurring opinion which states that there is no reason to doubt that the second jury's determination of the amount of damages fairly reflects the actual damages of the plaintiff arising out of the accident. I also agree with Justice Jacobs that there is no just reason to depart from the

accepted principle that plaintiff is entitled to only one satisfaction. However, I do not agree with Justice Jacobs' suggestion that the excess above full satisfaction should go to the parties who settled with the plaintiff prior to trial. No doubt those parties and their counsel carefully evaluated the probability that they and the other parties-defendants might be held negligent, and the probable amount of damages which the jury would find. Such a settlement, the result of an intelligent evaluation of potential liability with resulting damages, should not be disturbed.

I vote to modify.

FRANCIS, J. (dissenting in part).

## I.

I cannot agree with the result reached in Part I of the majority opinion. When a plaintiff claims to have been injured as the result of the negligence of three persons and he settles with two of them, under the law as I see it, he reduces his claim against the third person *pro rata*, that is, by two-thirds. If he obtains a judgment thereafter against the third person, his recovery is limited to one-third of it from that person. The remaining two-thirds are conclusively regarded as having been satisfied by the settling tortfeasors and the plaintiff is charged with having accepted the settlements whether the amount received was large or small, knowing that they would bring about the *pro rata* discharge of his claim. Practical administration of the Joint Tortfeasors Contribution Law, *N. J. S.* 2A:53A-1 *et seq.*, requires that result and this Court adopted it in *Judson v. Peoples Bank & Trust Co.*, 17 *N. J.* 67 (1954) (hereafter *"Judson* One").

In *Judson* One the Court gave thoughtful consideration to what the result ought to be under the act when one of several tortfeasors settles with the injured party for an amount which is less than his *pro rata* share of the total damage. It pointed out that equality between the tortfeasors could be accomplished in two ways: (1) by requiring the injured person to

credit upon any verdict against the others not the amount of the settlement, but the sum which would have represented the settler's *pro rata* share of the verdict; or (2) by allowing the injured party to obtain a judgment for his total damage, less the sum he already received by way of settlement. Then the tortfeasor who is required to pay in excess of his *pro rata* share of the judgment may be allowed to maintain a contribution action against the settler for the difference between his *pro rata* share and the amount of the settlement.

The Court regarded the second alternative as undesirable because if "the injured party is required to credit only the amount received in settlement, * * * he may be tempted to make collusive settlements * * *." 17 *N. J.*, at *p.* 92. For example, one of two alleged joint tortfeasors clearly may appear to have been solely or in large measure responsible for an accident, but he may be of doubtful financial worth, or a relative or friend of the injured party. The other alleged wrongdoer may be insured or sound financially. In such situation the injured party may accept a small sum in settlement of his claim against the one in return for his assistance in an improper concert of action to lay the blame on the other alleged tortfeasor.

Justice Brennan, who authored the opinion, declared for the Court that the first alternative is clearly preferable because collusive settlements are "wholly ineffective when a credit of the settler's *pro rata* share is the required result of any settlement, * * *." 17 *N. J.*, at *p.* 93. That result, he said, would not impair the public policy favoring compromise. Moreover, when such a credit is required the injured party cannot complain of unfairness, since the reduction of the ultimate judgment after trial would be a direct result of his own act in accepting in compromise less than the settler's *pro rata* share of the total recoverable damages. "Thus, if the settlement is not collusive, he makes it upon the basis of his own appraisal of the risks of recovery and will hardly be deterred from it because it may later eventuate that he accepted less than the settler's *pro rata* share." 17 *N. J.*, at *p.* 93.

Under the original Uniform Contribution Among Tort-feasors Act, 9 *U. L. A.* 233, issued in 1939, a release by the injured person of one joint tortfeasor, whether before or after judgment, did not discharge the others unless the release so stipulated; it only reduced the claim against them by the amount of the consideration paid, unless it provided for discharge of the settler's *pro rata* share of the ultimate judgment. Sections 4 and 5, 9 *U. L. A.* 242, 245. In 1952 when our Joint Tortfeasors Contribution Law, *L.* 1952, *c.* 335, was adopted, the Legislature rejected sections 4 and 5 of the uniform law, thus as Justice Brennan noted, clearly indicating its preference for a *pro rata* discharge of the remaining joint tortfeasors, whatever the consideration paid when one joint tortfeasor was released by the injured party. Although the statute made no express provision as to the effect of a settlement, the opinion said none was necessary because in light of the rejection of sections 4 and 5 of the uniform act, a *pro rata* discharge was a "logical incident of the created right of contribution * * *." 17 *N. J.*, at *p.* 93. "The aim of the statute to make a settler responsible for his *pro rata* share is realized when the credit on the total damage is in the amount of that *pro rata* share, and provisions for a right of action against him at the hands of his co-tortfeasors were unnecessary. Any remaining problems of contribution are limited to such as may arise among the non-settling defendants when the payment by any one of them upon the reduced joint judgment exceeds his *pro rata* share of the total damage." 17 *N. J.*, at *p.* 93.

The Court went on to illustrate specifically the purport of its decision. There were five alleged tortfeasors in the case. Two of them had settled with the plaintiff for a total of $2,500. It said that if a verdict were obtained against the three non-settling defendants for $315,000, the claimed damages, the *pro rata* shares of the five defendants would be $63,000 each. A credit of $126,000 would then be entered, that amount representing the sum of the *pro rata* shares of the two defendants who had settled. 17 *N. J.*, at *pp.* 72, 94.

Applying *Judson* One to the present case would produce this result. There are three joint tortfeasors, Anderson, Conaty and Angelos. (As the majority opinion indicates, Angelos and the Township are one tortfeasor. *N. J. S.* 2A:53A–1.) The jury verdict was $165,000. The *pro rata* share of each is $55,000. Anderson's settlement, the amount of which is immaterial, discharges his share. Conaty's settlement, the amount of which is also immaterial, under *Judson* One, even though it was greater than his *pro rata* share, discharges his share. The remaining defendant, Angelos, has no basis for complaint with this result; he is liable for a *pro rata share*, $55,000.

In a comprehensive two-part article entitled "Contribution and Indemnity Between Tortfeasors," appearing in 21 *Cornell L. Q.* 552 (1936) and 22 *Cornell L. Q.* 469 (1937) and written when there was considerable agitation for some form of joint tortfeasors contribution law, Professor Francis H. Bohlen anticipated the rule of *Judson* One. He said:

"If the injured man settles for a sum which, upon suit against the unreleased tortfeasor, is seen to be less than the proportion of the loss which the released tortfeasor should bear, the injured man who has consented to the settlement should bear the loss of this disparity. He should recover no more from the unreleased defendant than such proportion as the latter would have had to pay had the other delinquent been brought into the action as codefendant. Thus, if A, the original plaintiff, settles with B, one of the persons liable for his injury, for the sum of one thousand dollars, and in a subsequent action against the other defendant his damages are assessed at ten thousand dollars, A's recovery should be limited to five thousand dollars. A and not C should bear the loss entailed by the inadequate settlement which he has made with B." 21 *Cornell L. Q.*, at *pp.* 567, 568.

In considering the advisability of adopting the rule of the majority in this case, it should be noted that quite obviously Professor Bohlen favored the thesis that a settling defendant ought to be considered a tortfeasor and that the injured party should give *pro rata*, not *pro tanto*, credit to the judgment tortfeasors in determining their liability for contribution.

The second *Judson* case, *Judson v. Peoples Bank & Trust Co.*, 25 *N. J.* 17 (1957) (hereafter *"Judson* Two"), did not disagree with the earlier interpretation of our contribution statute, nor with the rule of *pro rata* discharge promulgated thereby. To quote from the opinion:

"Plaintiffs ask us to reconsider the first *Judson* opinion and urge that the remaining defendants receive a credit only in the amount of the settlement. As noted in that opinion, our Legislature did not adopt the Uniform Contribution Among Tortfeasors Act, but rather borrowed from it and left gnawing problems for judicial solution. Plaintiffs say that in concluding that the liability of the remaining defendants be reduced by the full *pro rata* shares of the tortfeasors relieved by settlement we read into our statute a result 'akin' to provisions of the uniform law which the Legislature refused to accept. We cannot agree. The plain import of sections 4 and 5 of the uniform law, which do not appear in our statute, is that where a tortfeasor settles for less than his full share the other tortfeasors shall receive a credit for the sum paid in settlement and may pursue their right of contribution against the settling wrongdoer unless the settlement papers contain an agreement for a full *pro rata* credit upon the liability of the remaining wrongdoers. Hence, the conclusions reached on the first *Judson* appeal rested upon an approach distinctly different from that of the omitted sections of the uniform law." 25 *N. J.*, at *pp.* 34–35.

The opinion goes on to concede that neither approach (*Judson* One or the uniform law) is satisfactory. It points out that in 1955 the National Conference of Commissioners proposed as a substitute measure that a settlement shall discharge the settling tortfeasor from liability for contribution if the settlement is made "in good faith," the non-settling tortfeasor to receive credit for the amount actually paid in settlement. This suggestion, said the Court,

"* * * seems to be a superior solution, but its origin must be legislative; we cannot possibly read it into our own statute without exercising a power that is not ours. In these circumstances we feel constrained to abide by the interpretation made on the first appeal, conceding that the consequences are unhappy but recognizing that the only possible alternative before us, to wit, the thesis of the uniform law of 1939, would hardly be an improvement." 25 *N. J.*, at *p.* 36.

And again referring to the purpose of the New Jersey act, the Court said: "It was not designed to prevent a full re-

covery by the victim unless he voluntarily invited a reduction by settling with a tortfeasor for less than a *pro rata* share." *Id.*, at *p.* 38.

I do not find in either *Judson* opinion the slightest intimation that a person who settles a tort claim made against him by an injured party is not to be considered a tortfeasor under the contribution act unless he is formally adjudged such after a trial. Every reasonable inference is to the contrary.

In spite of *Judson* One and the legislative history discussed in both *Judson* cases, the majority now concludes that a person charged with liability as a tortfeasor who settles with an injured party making the charge is not a tortfeasor for purposes of the contribution statute unless he is adjudicated as such after a trial. A rule of that nature uproots sound and long-held legal principles. A person who sues another asserting that his negligence caused injury or damage, and who obtains a settlement, should be estopped by public policy from taking a contrary position thereafter in order to pursue another self-serving purpose. A clear exposition of this doctrine appears in *Tompkins v. Clay-Street Hill R. Co.*, 66 *Cal.* 163, 4 *P.* 1165, 1168 (*Sup. Ct.* 1884).

"The compromise of an asserted claim does not necessarily involve an admission on the part of him against whom the claim is asserted that the claim is well founded. But one who, having commenced an action against another, has received money in consideration that the action shall be dismissed \* \* \* ought not to be permitted to deny that he received the money in satisfaction of a valid demand. The defendant paying the money may subsequently say: 'I did not and do not admit that I ought to have paid anything; I was willing to buy my peace.' But the other party ought not to be allowed to deny that he had any right to the money, the payment of which he had induced under pain of the prosecution of an action already commenced. He should not be permitted to say, with any beneficial result to himself, 'I pursued the defendant *falso clamore*, and I took his money by way of settlement of a pending action in which I never could have recovered.' "

The Supreme Court of Indiana in *Cleveland, C., C. & St. L. Ry. Co. v. Hilligoss*, 171 *Ind.* 417, 86 *N. E.* 485 (1908), took the same position. It said one who has suffered a wrong will

not be permitted to profit by the fears of those who occupy a position which subjects them to suspicion of being the wrongdoer, and who are willing to buy their peace rather than run a risk at law. On receipt of a consideration in settlement, the injured party will be precluded from denying that his claim was well founded. In such a situation it is not necessary that the party making the settlement was in fact liable. It is sufficient if there is an appearance of liability; "that is, something in the nature of a claim on the one hand and a possible liability under the rules of the law on the other." 86 *N. E.*, at *p.* 488. See, also, *Hillyer v. City of East Cleveland*, 155 *Ohio St.* 552, 99 *N. E. 2d* 772, 778 (*Sup. Ct.* 1951).

This age-old doctrine should not be regarded as changed by the Joint Tortfeasors Contribution Law unless the legislative intention to do so appears either expressly or by unavoidable implication from the language used. I find no such language. In fact, the contrary is evident. Section 1 says that the term "tortfeasors" means "two or more persons jointly or severally liable in tort for the same injury to person or property, *whether or not judgment has been recovered against all or some of them." N. J. S.* 2A:53A–1. (Emphasis added) Manifestly the italicized clause reveals a legislative awareness that tort claims are settled without trial by one or more of several persons claimed to be jointly liable to an injured person. Moreover, the language reasonably supports the conclusion that the intention was to treat as joint tortfeasors for purposes of administration of the act, those who settle claims against them without suit. In effect the italicized clause connotes an aim to perpetuate the old law that an injured person who receives consideration in compromise of his charge of negligence against an alleged wrongdoer has conclusively established the settler's liability in the sense that he will not be permitted to deny that liability.

The variety of contribution statutes in other jurisdictions makes it impossible to find very much help beyond our borders. But *Levi v. Montgomery*, 120 *N. W. 2d* 383 (*N. D. Sup.*

*Ct.* 1963), furnishes support for the position of this dissent. North Dakota adopted the 1955 revised version of the Uniform Contribution Among Tortfeasors Act, 9 *U. L. A.*, § 4 (1964, P. P., *p.* 122). Under the revision a settlement made in good faith discharges the settler from all liability for contribution to any other tortfeasor, and reduces the injured person's claim against the other joint tortfeasors by the amount stipulated in the release.

In *Levi, supra,* the plaintiff was injured allegedly as the result of the negligence of two tortfeasors. He sued them both charging joint negligence. Prior to trial one defendant settled. Trial of the action against the other resulted in a judgment against him. The judgment debtor sought a credit on the judgment for the amount of the settlement. The trial court refused to allow the reduction on the ground that the payment by the settler was a voluntary payment and that he was not liable in tort. (It does not appear from the opinion how or on what basis the trial judge reached that decision.) The Supreme Court's comment was: "The Court thus found that the implement company was not, in fact a tort-feasor and, since such defendant was not liable to the plaintiff in tort, the provisions of Section 32-38-04 [the contribution law] did not apply." 120 *N. W. 2d,* at *p.* 388. The Supreme Court, after alluding to the fact that the plaintiff's complaint charged the defendants with concurrent fault, said:

"Thus the question at issue between the parties is determined by the pleadings. Even though the plaintiff now contends that he, in fact, had no cause of action in tort against one of the defendants, the court will consider the issues as framed by the pleadings. Where the plaintiff charges several defendants with tort, and one of the defendants buys its way out of the suit and is given a release and covenant not to sue, the court will not go into the question of liability of such defendant. The test in such cases is: Was the defendant sued as a tortfeasor? * * * The question of actual liability in tort of any of the defendants so discharged by release and covenant not to sue is *wholly immaterial.*" 120 *N. W. 2d,* at *pp.* 388, 389. (Emphasis added)

On rehearing the court confirmed its original opinion, and in speaking of the settlement, said:

.

"Under these circumstances, the plaintiffs will not be heard thereafter to contend that, although they did not sue such defendant in tort, the defendant was not, in fact, liable in tort." 120 *N. W. 2d*, at *p.* 390.

In reaching a decision in the present case, the majority regarded the similar result in *Hoeller v. Coleman*, 73 *N. J. Super.* 502 (*App. Div.* 1962), as persuasive. The decision in that case was contrary to *Judson* One. More than that, to justify its departure from *Judson* One, the Appellate Division turned a gossamer thread appearing in this Court's opinion in *Oliver v. Russo*, 29 *N. J.* 418 (1959), into a supporting pillar. Now the majority apparently uses the pillar as the main structure. The *per curiam* opinion in *Oliver v. Russo*, *supra*, refused to consider the issue now before us because it was presented for the first time at the oral argument and had not been raised at the trial level "where it might have been dealt with procedurally as well as substantively." 29 *N. J.*, at *p.* 421. The Appellate Division in *Hoeller v. Coleman*, *supra*, took the quoted statement and the cited cases which followed it as an indication that we would accept the substantive argument. Now, the majority relies on *Hoeller* to support its thesis that a contrary result would be unjust in this case. Such a process is reminiscent of the comment of Dr. Henry Van Dyke in "The Man Behind the Book" (Charles Scribner & Sons, 1929):

"This leaves the globe poised on the elephant, and the elephant standing on the tortoise, and the tortoise supported by the shadow of the elephant." (at *p.* 9)

In my judgment the authorities noted above, particularly *Judson* One, as well as *Kelleher v. Lozzi*, 7 *N. J.* 17, 23, 24 (1951); *Gelsmine v. Vignale*, 11 *N. J. Super.* 481, 485 (*App. Div.* 1951); *Aljian v. Ben Schlossberg, Inc.*, 8 *N. J. Super.* 461, 465 (*Law Div.* 1950); *Smootz v. Ienni*, 37 *N. J. Super.* 529 (*Cty. Ct.* 1955); *New Amsterdam Casualty Co. v. O'Brien*, 330 *S. W. 2d* 859, 863 (*Mo. Sup. Ct.* 1960); and *McClure v. Lence*, 349 *Ill. App.* 341, 110 *N. E. 2d* 695, 697 (*App. Ct.* 1953), demonstrate that the plaintiff, having

settled with Anderson, cannot be heard now to say he is not a joint tortfeasor. Plaintiff's settlement thus being conclusive for purposes of the contribution law, the trial court should have removed the issue of his negligence from jury consideration. Submitting the interrogatory to them for a finding whether Anderson was guilty of any negligence which concurred in producing plaintiff's injuries was error, and the answer of the jury should be disregarded.

Accordingly, I would hold that by settling with Anderson, plaintiff discharged his claim against the remaining defendants *pro rata*, that is, by one-third of the $165,000 verdict. By settling with Conaty he likewise discharged his claim *pro rata*, *i. e.*, by one-third of the verdict.

There can be no better illustration of the adage that hard cases make bad law than this one. Let us consider what the majority opinion will do to the trial of cases. Simply stated it will make the trial of multiple tortfeasor tort cases at least in part a sham and the court room a stage for thespian members of the bar whenever plaintiff has settled with one or more of the defendants.

By force of the majority opinion, when a plaintiff sues two defendants (for example) charging them with joint negligence in his complaint and one settles and obtains a covenant not to sue, in spite of the settlement, and no matter what the consideration received, plaintiff may take the inconsistent position that the settler was not negligent, and that in fact he had no justifiable claim against him. Then he may proceed to trial and undertake to prove the settler was free from fault and the remaining defendant solely responsible for his injuries or damage. If on such a trial the jury finds the settler not guilty of negligence and so not a tortfeasor, and returns a verdict against the other defendant for the full damage, the plaintiff then will collect from the latter not only his *pro rata* share of the judgment, but also the difference between the amount received in settlement and the second *pro rata* share. Thus, by his about-face the amount paid to plaintiff in settlement is transformed from a *pro rata* to a *pro tanto* deduction

from the total judgment. But if the settler is exonerated at this trial, on the thesis of the majority, he is not a tortfeasor. Does he become a donor or volunteer? If, as the majority says, the exoneration signifies the plaintiff made a mistake in claiming the settler was liable to him, is it not just as equitable to say the settler made the same kind of mistake in settling the claim? Why then should not the settler be entitled to a return of his payment to the plaintiff? In the light of the jury's verdict, this repayment would do full justice among the parties, for then only the party adjudged to be a tortfeasor and responsible to the plaintiff would be called upon to pay the judgment representing plaintiff's full damages.

Furthermore, suppose the judgment resulting from this unusual type of trial shows that a settler who is adjudged a tortfeasor paid more than his *pro rata* share of the judgment. (Such a result is conceivable. It happened in this case. True, the settler may be indifferent at the trial on the issue of liability because, whatever the verdict, the settlement discharges him from any additional liability. But, if he participates in the trial, as presumably he may under the majority opinion, would he not devote his energies in large measure to an attack upon the nature of plaintiff's injuries and monetary losses?) Should he recover the overpayment, as Justice Jacobs' concurring opinion suggests? Or, should the plaintiff retain the overpayment unless, as the majority suggests, the settler can show plaintiff is unjustly enriched? Or, should plaintiff retain the overpayment and apply the full settlement in reduction of the final judgment because, as Justice Proctor suggests, the parties bargained at arm's length about the value of plaintiff's claim against the settler and their considered valuation should not be disturbed? The fact that the members of the Court are in disagreement as to the proper answers to these questions further convinces me of the unsoundness of Part I of the majority opinion.

A favored objective of the law is to encourage settlements. It is inconceivable that the majority holding will serve that

purpose. Collusive settlements may be stimulated, however. A plaintiff may accept a relatively small consideration from an obvious tortfeasor of uncertain financial responsibility in return for an agreement for his vigorous assistance at the trial. The joinder of forcees could serve three possible ends: first, to join plaintiff and the settler in an effort to demonstrate that he (the settler) was not negligent; and second, to aid the plaintiff in fastening all of the negligence on the codefendant. In the third method of assisting the plaintiff, depending on the nature of the case, and perhaps on the courtroom atmosphere, the settler could take on the role of the penitent tortfeasor who is honest enough to concede he was somewhat at fault, and finds it difficult to understand why the other at least partially guilty defendant has failed to acknowledge his fault. He has nothing to lose by such a course, because the settlement has made him immune from further liability to the plaintiff and from contribution to the tortfeasor who pays the judgment. In the first and second endeavors, because of the small consideration paid, the settler will be helping plaintiff to save the difference between a *pro tanto* and a *pro rata* share of whatever judgment the jury returns against the codefendant. And he would be helping himself if on further consideration the law should recognize his right to recover the money paid to the plaintiff on the mistaken belief he was a tortfeasor. The plaintiff would not be harmed thereby if the remaining defendant was sound financially.

The majority opinion does not discuss the point specifically but the context clearly indicates the fact that a settlement has been made with one defendant may be proved at the trial. Presumably, also, the sum received by the plaintiff will not be introduced. Thus the jury will be in the dark as to the amount of the codefendant's payment, but they will be aware that plaintiff charged him with negligence either before the suit was instituted in order to obtain the settlement, or in the complaint (the allegations of which the defendant on trial will probably use to advantage), and that the charge produced

a settlement. The jury will see a plaintiff endeavoring to persuade them that the settler was not at fault at all and that the remaining defendant was wholly responsible. Further, in most cases they will see the settler, in spite of his payment, acting in concert with the plaintiff for two purposes: to show absence of negligence on the settler's part and negligence on the part of the codefendant. Finally, in instances where the settler's payment was large, they will see him doing his utmost to demonstrate that the injuries and monetary losses are not as substantial as plaintiff claims. In my judgment the new trial techniques will father confusion rather than simplicity in the future trial of cases.

Moreover, it seems to me that in applying the new approach in tort cases in the future, the plaintiff's action should determine the course to be followed in litigation begun subsequent to a partial settlement. If after a compromise he sues the other alleged tortfeasor without joining the settler, the plaintiff ought to be conclusively presumed to have recognized the settler as a tortfeasor, and as having discharged a *pro rata* share of any judgment recovered at the trial. In such cases a defendant should not be burdened with the obligation to bring the settler in on a third-party claim.

Consideration of the procedure to be followed hereafter when a plaintiff settles with one of two alleged tortfeasors is important. (Of course, the greater the number of alleged tortfeasors the more aggravated the problems become. I have been discussing the situation in terms of two tortfeasors for illustration purposes.) Take first the case where the injured plaintiff settles with one of two tortfeasors before litigation. When a suit is instituted subsequently against the other alleged wrongdoer, must the settler be joined as a defendant? As indicated above, even under the majority opinion joinder should not be imperative; failure of the plaintiff to do so should result in automatic *pro rata* discharge of plaintiff's claim. But assuming that in most cases the rule adopted by the majority will produce a complaint charging both settler and non-settling tortfeasor with negligence, what happens

when the settler is served? Normally he would move for and be granted a summary judgment on the strength of his settlement. *Cf. Smoolz v. Ienni, supra.* Now, presumably, the motion will be denied in order (1) to allow an attempt by the plaintiff at the trial to transform this defendant from a settling tortfeasor to an innocent bystander in order to recover the difference between a *pro tanto* and a *pro rata* share of the ultimate judgment, and (2) to permit an effort at the trial by the remaining defendant to persuade the jury that the settler was solely at fault, and thus save himself from any payment, or to persuade the jury that the settler was partly at fault and thus save himself from the payment of any more than a *pro rata* share of the judgment.

If plaintiff does not join the settler in the suit, and that failure does not constitute acceptance of his status as a tortfeasor, then the non-settling defendant undoubtedly will bring in the settler by third-party contribution proceedings. In this instance also, the settler would move for summary judgment based on his covenant not to sue. The motion would be denied on the basis of the majority opinion here, presumably with an order permitting the case to be tried solely to have the jury determine if the settler was a tortfeasor. I suppose in view of plaintiff's interest in saving the difference between a *pro tanto* and *pro rata* discharge of the settler, plaintiff would have to be made a defendant in the third-party proceedings, and that the defendant in the main suit would have the burden of proving the settler was a tortfeasor.

Another possible mechanism suggests itself. On the majority thesis when plaintiff sues the remaining alleged tortfeasor, may he join a separate count seeking a declaratory judgment as to whether the settler was a tortfeasor?

No matter what efforts are made to simplify the rule now promulgated, administration of the rule is bound to hinder rather than promote settlements. Assuming the new rule will provide incentive for the first settlement between plaintiff and one alleged tortfeasor, a suggestion which I think is questionable, compromise with the remaining tortfeasor will be more

difficult. Under *Judson* One, at the outset of the settlement talks between plaintiff and the non-settling defendant, they would know they were negotiating to compromise the undischarged one-half of plaintiff's total damage. But under the new rule the basis on which they would negotiate would be less concrete and much more speculative. Defendant's position would be that he was not negligent at all and so owed plaintiff nothing, or that he was only partly at fault and so owed only one-half of a possible judgment; or even if found solely responsible, he would be entitled to credit for the sum plaintiff had already received from the settler. Moreover, defendant could reasonably strengthen his bargaining position by adding that psychologically plaintiff's posture before a jury would be unsympathetic and harmful to his cause. That argument cannot be dismissed lightly because of plaintiff's earlier inconsistent position with respect to the settler's liability.

Finally, if it be true that because of the majority opinion settlements will be less attractive, another unfortunate result is bound to follow. Our trial lists are already overcrowded. A high percentage of the cases are tort actions. A further increase is as inevitable as it will be unfortunate.

All of the foregoing considerations convince me that *Judson* One represents a sound and practicable interpretation of the New Jersey tortfeasors contribution statute. I do not maintain that it presents a perfect solution of the problem. It has been on the books, however, since 1954. *Judson* Two criticized but did not depart from the earlier holding. Instead the Court treated the matter as one for further study by the Legislature. In spite of the open invitation the statute has remained unchanged. An inference is that the lawmakers are satisfied with the view of the statute taken by the Court in *Judson* One.

II.

I agree with the result reached in Part II of the majority opinion. That conclusion follows as a matter of course from the views I have expressed under Part I as to the proper construction of the statute.

If, under *Judson* One, a settlement with one tortfeasor results in a *pro rata* discharge of the remaining tortfeasors' liability, the consideration paid is of no consequence. If an injured party is held to a *pro rata* discharge of his claim when the sum received is less than such a share, there is no sound reason why he should be charged with more than a *pro rata* discharge if the settler pays more than such share. Under *Judson* One the fact of settlement is the criterion, not the amount received; the amount is irrelevant. When the interested parties bargain at arm's length and make their own evaluation of claims, just as the injured party is held to the detriment of his compromise, so, too, he should be allowed the benefit of his bargain.

The majority opinion takes the view that plaintiff may retain the excess of a settlement over the settler's *pro rata* share of the ultimate judgment upon the trial, except perhaps where unjust enrichment is shown. (Where the excess is to go if such enrichment appears was not decided.) Aside from my disagreement on the basic problem discussed in Part I, I believe the test suggested for deciding whether plaintiff has been unjustly enriched imports into the law a startling new concept. It suggests that the cost of the litigation, presumably including attorneys' fees, may be taken into account. Although an argument can be made for inclusion of such fees in tort litigation, under our long-established rule a jury verdict is limited to compensating the plaintiff for his injuries and monetary losses such as medical, hospital bills, loss of wages and the like. Counsel fees have never been includable. I can see no more justification for allowing them to be considered on this kind of a claim of unjust enrichment than for using them as a basis for sustaining a jury verdict against a claim of excessiveness.

### III.

Under all the circumstances, Anderson, Conaty and Angelos should be regarded as joint tortfeasors. Anderson and Conaty each having discharged one-third of the $165,000 verdict by

reason of their settlements, Angelos' liability should be limited to his one-third share, namely $55,000. Accordingly, I would reduce the judgment assessed against him by the trial court to that amount.

*For affirmance* — Chief Justice WEINTRAUB and Justices HALL, SCHETTINO and HANEMAN—4.

*For modification*—Justices JACOBS, FRANCIS and PROCTOR —3.