501 F.2d 806
 163 U.S.App.D.C. 246
 George W. ROSE, Jr., etc., et al.
v.
ASSOCIATED ANESTHESIOLOGISTS et al., Appellants.
George W. ROSE, Jr., etc., et al., Appellants,
v.
WASHINGTON HOSPITAL CENTER et al.
George W. ROSE, Jr., an infant By and Through his father and
next friend, George W. Rose
v.
Arcadius H. HAKIM et al., Appellants.
George W. ROSE, Jr., an infant By and Through his father and
next friend, George W. Rose, Appellant,
v.
Arcadius H. HAKIM et al.
 Nos. 72-1056, 72-1063, 72-1910, 72-1911.
 United States Court of Appeals, District of Columbia Circuit.
 Argued Jan. 24, 1974.
Decided June 25, 1974, As Amended July 11, 1974 and July 18, 1974.
 
 J. Harry Welch, Washington, D.C., and Denver H. Graham, Washington, D.C., for appellants in Nos. 72-1056 and 72-1910.
 J. Joseph Barse, Washington, D.C., for appellants in Nos 72-1063 and 72-1911 and appellee Rose in No. 72-1056.
 John L. Laskey, Washington, D.C., with whom Diane M. Sullivan, Washington, D.C., was on the brief for appellee Washington Hospital Center.
 Before FAHY, Senior Circuit Judge, and LEVENTHAL and MacKINNON, Circuit Judges.
 LEVENTHAL, Circuit Judge:
 
 
 1
 This is a medical malpractice action which was brought by plaintiffs, an infant and his father, against three defendant entities: Dr. Hakim, an ear, nose and throat surgeon; a number of physicians in partnership as anesthesiologists (Associated Anesthesiologists); and the Washington Hospital Center (Hospital).
 
 
 2
 The grisly facts are set forth in the opinion of the District Court filed November 10, 1971.[1] It suffices here to say that a simple operation upon a small boy resulted in severe permanent brain damage. He must live the rest of his life-- presumptively, until 2027, for his life expectancy has not been shortened-- with cortical blindness; an affected sense of touch precluding use of the Braille system; functional accomplishments in both upper and lower extremities of a mere infant; a mind that functions well and must learn through listening; and total dependence on others.
 
 
 3
 Fearful of what might result if the jury found against them, the surgeon, who paid $95,000, and the partnership, which paid $175,000,[2] entered into settlements. These were approved by the trial court, at the request of plaintiffs and the settling defendants, but without the consent of the Hospital.
 
 
 4
 The case proceeded against the Hospital and resulted in jury verdicts awarding the infant $265,000 and the father $29,777.25. At the same time the court, without a jury, tried the cross-claims of the settling defendants against the Hospital for indemnification or contribution.[3] The jury was not informed of the fact or amount of the settlements, and was excused whenever evidence related solely to the cross-claims. On the cross-claims the court found that the brain damage was proximately caused by the negligence of the Hospital's servants and defective equipment in its intensive care unit. The court found that the surgeon and firm were not negligent and did not contribute to the brain damage. These findings are not clearly erroneous and are accepted on appeal.
 
 
 5
 The issues before us relate to the amounts that may be recovered from the Hospital by plaintiffs and by settling defendants on the cross-claims.
 
 
 6
 1. Hospital's right to a Snowden credit that takes into account the settlements with the other (non-liable) defendants
 
 
 7
 On November 17, 1971, the District Court denied the Hospital's claim for a credit on the verdict because of the amounts received by plaintiffs in the settlements with persons held not to be tortfeasors. It viewed those payments by the settling defendants, as in legal effect, from collateral sources. That theory was rejected by this court on December 10, 1971, in Snowden v. D.C. Transit System, 147 U.S.App.D.C. 204, 454 F.2d 1047 (1971). Accordingly, the record was remanded to the District Court for reconsideration. On July 24, 1972, the District Court held that Snowden required the court to credit in full the amounts received in settlement. This operated to cancel any liability of the Hospital to the father, and to reduce its liability to the infant to $25,000.[4]
 
 
 8
 The District Court was correct in holding that our Snowden opinion rejects the 'collateral source' or 'gratuity' theory and requires that the Hospital receive a credit against the verdict that takes into account the amounts received in settlement.
 
 
 9
 Plaintiffs urge on appeal that this result is not correct since on the facts there was not a single injury but multiple injuries, separate and independent, and that the amounts received in settlement were not for the same injury as those covered by the verdict. We think the District Court was correct in viewing the case as presented as being in the large a case involving a single injury. The court instructed the jury on a one-injury theory (J.A. 50-51), and its verdict must be taken to reflect its valuation of the damage to the plaintiffs. Hence a Snowden credit must be allowed.
 
 
 10
 2. The plaintiff was entitled to limit the amount of the Snowden credit so as not to relieve the negligent Hospital of its equitable pro rata share of the verdict liability
 
 
 11
 However, we agree with plaintiffs in their alternative contention that the Hospital was not entitled to a Snowden credit in an amount exceeding the pro rata share of the verdict ascribable to the settling defendants, in this case two-thirds of the amount of the verdict.[5]
 
 
 12
 The District Court recognized that a credit exceeding a pro rata share was inequitable. If all the defendants had been negligent, the Hospital would have been entitled only to a pro rata reduction in the verdict (in the amount of $196,518.16) and to be obligated to pay one-third of the verdicts-- to pay $9,925.75 to the father, and $88,333 to the son. Martello v. Hawley, 112 U.S.App.D.C. 129, 300 F.2d 721 (1962). Yet here, where the Hospital was solely negligent, it was held entitled to a greater credit, of the full amounts paid, leaving it without any liability to the father and a liability of only $25,000 to the son.
 
 
 13
 The District Court acknowledged that the judgment would leave the Hospital enriched', but said that this was mandated, that 'the rule in Snowden as applied here is a hard rule.'
 
 
 14
 We think the District Court failed to heed the principle of justice, of avoiding unjust enrichment, which has been a cornerstone of all our opinions in this field of jurisprudence, from George's Radio v. Capital Transit Co., 75 U.S.App.D.C. 187, 189, 126 F.2d 219, 221 (1942), where the court evolved a judicial rule of contribution among tortfeasors,[6] to Snowden itself.
 
 
 15
 The persistence of the theme of justice and avoidance of unjust enrichment did not disappear merely because the court has undertaken, in then Judge Rutledge's words, 'to blend the themes of compromise and contribution, maintaining the essential integrity of each as far as possible.' McKenna v. Austin, 77 U.S.App.D.C. 228, 134 F.2d 659 (1943).
 
 
 16
 It was this blend which accounted for the credit formula of Martello v. Hawley, supra. Judge Bastian considered the pro rata credit rule to retain the principle of contribution, that 'in justice each tortfeasor should share his part in the burden of making the injured party whole again.' He concluded that there was justice in the credit, although plaintiff's total recovery would be reduced.
 
 
 17
 The Martello principle was applied in Brightheart v. McKay, 136 U.S.App.D.C. 400, 420 F.2d 242 (1969), where a verdict for $30,000 was reduced by a 50% Credit because of a ($7,000) settlement with a co-defendant. This case was in a sense a forerunner of Snowden because the court, though treating the case as one where the co-defendant was negligent,[7] acknowledged that the precise question of his negligence to the passenger had not technically been litigated. This court addressed itself to plaintiff's contention that he should not be victimized from recovering full damages because of a modest settlement that reflected 'a correct forecast that the jury would not hold (the co-defendant) liable to plaintiff.' We responded: 'The counter-consideration is, simply, that (plaintiff) cannot equitably insist that he is entitled to full damages from (defendant) in addition to $7,000 from (the settling codefendant).' (at p. 402, 420 F.2d at 244.)
 
 
 18
 In Snowden the court squarely faced a settlement with a person who was held not to be a tortfeasor. It allowed a credit even though there was no right of contribution (because the settling defendant was exonerated). This was salutary as precluding potential chicanery, and it avoided the anomaly that a plaintiff would benefit by losing at trial to tortfeasors with whom he had settled. However, the Snowden rule was applied in a case where the verdict was for more than twice the settlement amount. The court recognized, in footnote 6, that different treatment might be applicable in a case where the verdict was for less than twice the settlement.[8]
 
 
 19
 Snowden held that a settling defendant cannot be considered a collateral source like a gratuitous or preplanned benefit, citing, inter alia, Prosser, Law of Torts 50 (4th ed. 1971). It applied the principle that the plaintiff was entitled to but one compensation for his loss. The one-satisfaction rule 'is equitable in its nature, and its purpose is to prevent unjust enrichment.' So says Prosser, id. at 45, and so said this court in Brightheart.[9]
 
 
 20
 The one-compensation rule, grounded in unjust enrichment, is not to be applied in such a way as to generate unjust enrichment to the only litigating defendant. In the case at bar, there were three distinct categories of tortfeasors at the outset of the litigation, each faced with a substantial prospect of adverse judgment. No one knew who, or which, might be held liable. It would be unjust enrichment, as the trial court said, to give the only defendant who was eventually found liable, the Hospital, a full pro tanto credit for the full amount paid by the others. Such a pro tanto credit leaves the Hospital with no burden at all as to the father plaintiff, and with a lesser economic burden to the infant plaintiff than it would have borne if all had been found liable and each had to bear his pro rata share (in this case, a one-third share). Snowden called for a pro tanto credit of the full amount paid by the settlors in a case where that left the litigating defendant with liability for at least a pro rata share. The Snowden credit is subject to a limitation of amount so as to assure that the defendant held liable in the litigation does not pay less than his equitable share. This limitation avoids needless irony that a rule grounded in avoidance of unjust enrichment might be applied to accomplish an unjust enrichment. Even with this limitation, a liable defendant obtains credit for a substantial part of the sums paid in settlement by the other defendants, and this avoids the salient problems of collusion and chicanery underlying the Snowden ruling.
 
 
 21
 3. The settling defendants are not entitled to recovery from the Hospital
 
 
 22
 We affirm the dismissal of the settling defendants' claim against the Hospital.
 
 
 23
 The settling defendants obtained protection against the possibility of larger verdicts against them. Their settlement agreement included protection, by the plaintiffs, against any exposure on their part to greater liability that might be result from equitable doctrines of contribution (see note 2, supra). They cannot equitably insist on a continuing involvement in the litigation for the purpose of invoking contribution to lessen their payment when they have no exposure to an increase in payment if contribution should be sought from them.[10]
 
 
 24
 The settling defendants make a brief reference to the possibility that indemnity may provide a theory that will serve them in pressing a claim against the Hospital even if contribution does not. We need not define the general basis of indemnity between tortfeasors, a matter that has presented some difficulty to students of the subject,[11] for cross claimants candidly say (Br. 10) that this claim 'would admittedly involve an extension of the traditional right of indemnity.' It suffices for this case to say that in any event indemnification is, like contribution, an equitable doctrine devised in cases not governed by contract requirement, for the avoidance of unjust enrichment. Accordingly, relief must be denied for the same reasons set forth in our discussion of the claim based on contribution principles.
 
 
 25
 The case is remanded with directions to recompute the credit allowed to defendant Hospital Center against plaintiffs' verdict, so that the credit does not exceed two-thirds of the amount of the jury's verdict. In all other respects, the judgments appealed are affirmed.
 
 
 26
 So ordered.
 
 
 
 [1]
 Rose v. Hakim, 335 F.Supp. 1221 (D.D.C.1971)
 
 
 [2]
 The settling agreements stated that plaintiffs gave the settling defendants a full release of all liability; that the amounts were accepted by plaintiff 'in partial satisfaction' of the injuries and damages suffered; and that in the event the defendant is held liable for contribution, plaintiff 'will reduce pro rata any judgment he may recover against any person not a party heerto who obtains in judgment or order for contribution against the second party.'
 
 
 [3]
 The Hospital pressed a cross-claim against the firm for indemnification
 
 
 [4]
 The father received $30,000 in settlement, which was credited against the $29,777.25 judgment. The son received $240,000 in settlement, which was credited against the $265,000 judgment
 
 
 [5]
 The 'pro rata' concept of Martello v. Hawley, infra, does not depend on a mechanistic count of number of defendants. In this case the firm of anesthesiologists accounted for ten individual defendants but only a one-third share. Compare Wold v. Grozalsky, 277 N.Y. 364, 14 N.E.2d 437 (1938). Moreover, at some point the potential liability of a settling defendant may be so modest in relation to the total claim as to preclude his inclusion in the calculus of a pro rata share. See Theobald v. Angelos, 44 N.J. 228, 208 A.2d 129 (1965) (as to the claim against Anderson, not given a pro rata weight)
 We have no occasion here to consider the issue that has led to a split of opinion in the state courts, as to whether degrees of fault may be considered in determining pro rata shares.
 
 
 [6]
 In Judge Groner's words, there is a common burden 'which in equity and good conscience should be equally borne.' 75 U.S.App.D.C. at 190, 126 F.2d at 222
 
 
 [7]
 The indication of the negligence of the co-defendant (the host in whose car plaintiff passenger was injured) was derived from a verdict, in a separate action, that he could not recover from the outside driver, who pleaded contributory negligence of the host driver
 
 
 [8]
 It was on that ground that the court distinguished Otis v. Thomas, 104 U.S.App.D.C. 343, 262 F.2d 232 (1958)
 
 
 [9]
 See also Theobald v. Angelos, 44 N.J. 228 208 A.2d 129 (1965)
 
 
 [10]
 In McKenna v. Austin, supra, 77 U.S.App.D.C. at 234, 134 F.2d at 665, it was assumed that a settling defendant may have a right of contribution against a litigating defendant found liable in an amount less than twice the settlement. But the court expressly said it was not deciding the various questions of contribution and credit that it discussed 'in advance of presentation' (at 235, 134 F.2d at 666). Nor is this in the category of statements which, though technically dicta, are reflective expressions that have crystalized into the settled assumptions of bench and bar. On the contrary, the Martello court expressly left open the viability of the McKenna dictum, 112 U.S.App.D.C. at 130-131, 300 F.2d at 722-723. Pursuing the matter further, it is now apparent that this dictum is contrary to the reasoning, if not the holding, of Martello v. Hawley, supra
 In Martello, we held that the non-settling defendant is entitled to a pro data reduction of the verdict where other joint tortfeasors had settled, even though the settlement was for less than the settling party's pro rata share. The guiding principle was that a settlement disposes of that proportionate share of the lawsuit. We think that equity requires that this principle be applied with mutuality. The settling party has settled his share of the case for a specified amount. That amount may not be increased because his settlement turns to be for less than a pro rata share. It should not be subject to reduction through contribution because he has settled for what turns out to be greater than a pro rata share. This is the rule set forth in the Uniform Contribution Among Tortfeasors Act (see 2(3) of the 1939 Act, 1(d) of the 1955 Act, and is responsive to the principle of equity underlying contribution doctrine.
 
 
 [11]
 See Restatement (Second) of Torts 886B, comments a-c (Tent. Draft No. 18, April 26, 1972). Among other things, the authorities seem to regard indemnity, as distinguished from contribution, to involve liability to reimburse for all payments made by the indemnitee. Id., comment c; Prosser, Law of Torts 310-11 (4th ed. 1971)