STEGER ET AL. *v.* EGYUD

[No. 161, September Term, 1958.]

*Decided March 18, 1959.*

The cause was argued before HAMMOND, PRESCOTT and HORNEY, JJ., and KEATING, JR., Associate Judge of the Second Judicial Circuit, specially assigned.

*Melvin J. Sykes* and *Frederick J. Green, Jr.*, with whom was *James J. Lindsay* on the brief, for appellants.

*W. Hamilton Whiteford* and *Wilbur D. Preston, Jr.*, with whom were *Due, Nickerson, Whiteford & Taylor* on the brief, for appellee.

HAMMOND, J., delivered the opinion of the Court.

In 1955 the appellee Egyud suffered serious injury to his head and arm when the automobile in which he was riding, driven by his son-in-law Trainor, collided at night with a parked tractor-trailer owned by Steger, the individual appellant, and leased to Victor Lynn Lines, the corporate appellant. Soon after the accident, Trainor's insurance company paid Egyud $6,500.00, in return for his covenant not to sue Trainor. In 1956 Egyud sued Steger and Victor Lynn Lines in Baltimore. Egyud and Trainor lived in New Jersey and the accident and the settlement took place in that State. Before trial the plaintiff gave notice that he intended to rely on New Jersey law, and under Code, 1957, Art. 35, Secs. 47-53, the Uniform Judicial Notice of Foreign Law Act, the statutory and case law of New Jersey were required to be noticed judicially.

The case was tried on issues—(a) Did appellants' negligence contribute to the accident and damage; (b) Did Trainor's negligence contribute to the accident and damage; and (c) The amount of damage. The jury found appellants negligent, Trainor not negligent, and assessed the damages at $40,000.00.

Appellants make these main contentions: (1) that the trial court erred in refusing to let the jury know of Trainor's settlement with Egyud and the covenant not to sue; (2) that under New Jersey law appellants are entitled to an automatic *pro rata* reduction of one-half the jury's verdict because of

334

the settlement by Trainor, a joint tortfeasor; (3) that because of the automatic *pro rata* reduction, or because the evidence showed as a matter of law that Trainor had been negligent, it was error to submit his negligence to the jury; (4) that in the alternative, appellants are entitled to a *pro' tanto* reduction in the verdict of $6,500.00, the amount Egyud received in settlement; and (5) that the court erred in its charge on the burden of proof.

The evidence was that Egyud was riding on the right front seat of Trainor's car on U. S. Route 130, a dual highway with two lanes in each direction. The scene of the accident was about two-thirds of the way up on an ascending grade where there was a third lane. Appellants' tractor, pulling a flatbed type trailer, suffered a broken fuel pump and was parked in the third lane. The driver put out three ten-inch high reflectors that shone when light hit them, one at the left hand corner of the trailer under the body, another in the center of the lane fifty feet back of the trailer, and another fifty feet beyond that, close to the curb. He telephoned to Baltimore for a fuel pump and then went to sleep in the cab, without making any effort to have the truck towed off the highway. The court charged the jury, seemingly by agreement of the parties, certainly with no exception being taken by either side, that Sec. 39:3-62 of the Annotated Code of New Jersey required a motor vehicle that is stopped on a highway or a shoulder, when lights are necessary, to be equipped with "one or more lamps which shall exhibit * * * a red light visible from a distance of five hundred feet to the rear." He similarly charged the jury that Sec. 39:3-64 of the same code required commercial vehicles weighing over five thousand pounds to carry at least three portable flares, electric lanterns or other devices "capable of continuously producing a warning light visible from a distance of at least five hundred feet for a period of at least twelve hours" and to put one ahead, one behind and one on the traffic side of any such vehicle disabled on the highway during a time when lights are required. (See, however, Laws of New Jersey, 1947, Ch. 82, amending Sec. 39:3-64 of the Annotated Code

of New Jersey and said section as it appears in the 1958 supplement to the Annotated Code.)

Trainor started up the grade, remaining in the right-hand lane which became the middle lane after the road widened. A tractor-trailer passed him on the left and moved to its right as it went upgrade and slowed so that there were only about five feet between it and Trainor's car. Trainor took his foot off the gas to slow his progress and eased to his right. As he did so, Egyud called "look out", and Trainor saw a dark object in the road with no lights on it about ten feet away and cut to his left, but hit or scraped the body of the trailer. The trailer, says Trainor, was eight feet wide, the lanes nine feet wide, and the trailer was not parked straight to the curb, the front part being over the tar strip separating the lanes, with the left rear corner two inches inside the strip. Egyud said he saw a low little red light four or five feet away when he called out, and that there was traffic passing on the left as Trainor slowed down and then struck the trailer. Before he slowed down, he was going forty-five miles an hour in a fifty-mile zone. The weather was clear and the road dry.

The New Jersey state trooper, who arrived after the accident, found one undamaged reflector, the one under the left rear corner of the trailer. The other two had been run over and flattened, by whom does not appear. There were no lights or flares on or near the trailer as the court charged the jury the New Jersey law required.

The appellants offered statements Trainor had given to their investigator and to the state trooper. The investigator said Trainor told her traffic was heavy; he could not pass the tractor-trailer that had passed him (not the one he struck); a car to his left scared him and he pulled to his right and hit the parked trailer. The trooper says Trainor told him that he did not see the reflectors of the disabled trailer and "suddenly veered to the right shoulder" and struck it.

Appellants do not seriously urge that the evidence did not require submission of their negligence to the jury, and clearly it did. On his and other testimony from the stand, we do not find that Trainor could be said to be negligent as a matter

of law. The weight and effect of his prior statements were for the jury.

Appellants earnestly press their claim that they were seriously prejudiced by the court's failure to let the jury know of the settlement with Egyud and the covenant not to sue. Trainor was not a party defendant because Egyud had agreed not to sue him, and appellants could not obtain service on him. Appellants argue that since the jury did not view Trainor as a defendant, they probably concluded that he could not have been liable; for if he had been, one or the other of the parties would have brought him into the case. This, they suggest, prevented a true appraisal by the jury of their claim that Trainor's negligence was the sole proximate cause of the accident and of his credibility on the stand, weighed against his earlier statements. We find this fine spun argument no more than speculation. If the jury had been told of the settlement and the covenant, they well may have concluded from the fact of the settlement that Trainor had been negligent (although his insurance company made the settlement). On the other hand, if the jury had taken the words of the covenant at face value, they could well have found, as they did, that he had not been liable, for the covenant says that Trainor "denies liability and denies that the aforesaid injuries, damages and losses were occasioned or in anywise contributed to or caused by any negligence, liability or fault on his part", and also that neither the covenant nor the payment of the agreed settlement "shall in anywise be construed as an admission of liability" on the part of Trainor.

The cases are not uniform on the subject. They agree generally that the amount paid should be deducted from the judgment against the other tortfeasor. Some hold that the jury should make the deduction, others that the court should make it. See the cases in the annotation in 104 A. L. R. 931, and Cf. *Brandstein v. Ironbound Transp. Co.* (Ct. of Errors & Appeals of N. J.), 172 A. 580, with *Klotz v. Lee* (Super. Ct. N. J.), 114 A. 2d 746, 749,[1] appeal dismissed,

---

1. "It would tend to influence the jury to consider the arrangement an admission of negligence on the part of Lee which, in fact, it was not

121 A. 2d 369. In the setting in which the problem is here presented, we find the thinking of the Illinois courts persuasive. In *De Lude v. Rimek* (App. Ct. Ill.), 115 N. E. 2d 561, 565, the Court said: "It is well understood by lawyers and judges experienced in such matters that in a case where evidence is offered of the payment of a substantial sum for a covenant not to sue, the jury considers it evidence that the covenantee is the party responsible for the injury, and that defendant or defendants should be exculpated." The Court held: "To permit the introduction of the covenant and its attendant facts in every case would seriously jeopardize a plaintiff's opportunity for a fair trial. Further, it would tend to discourage settlement of this type of litigation when two or more defendants are involved." See also *Schumacher v. Rosenthal*, 226 F. 2d 946, 948 (C. A. 7th Cir.); and *Jacobsen v. Woerner* (Kan.), 89 P. 2d 24. Appellants showed no prejudice in this contention.

Our decision that Trainor was not negligent as a matter of law leaves as the central and pivotal question the effect of the covenant not to sue on the amount of the judgment and on contribution, in the light of the finding of the jury that Trainor was not negligent in fact. The litigants agree that New Jersey law applies and controls all matters of substance, including the extent of liability and the right to, and measure of, contribution. Restatement, *Conflict of Laws*, Sec. 412. Prior to 1952, there was no right of contribution in New Jersey among conscious or intentional wrongdoers or tortfeasors *in pari delicto*. In 1952 New Jersey passed a short version of the Uniform Contribution Among Tortfeasors Act. It adopts the definition in the Uniform Act that the term joint tortfeasors means two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered, and provides that the right to contribution exists among joint tortfeasors. There is nothing in the Act about releases or covenants not to

---

* * *", and "It has, indeed, been frequently observed by negligence practitioners that adjustment of verdicts by the court after rendition, rather than instructions to the jury during trial, is the only assuredly non-prejudicial method of handling the problem of credit for partial satisfaction of a claim * * *."

sue, sections 4 and 5 of the Uniform Act having been omitted in the New Jersey Act.

In 1954 the Supreme Court of New Jersey decided the case of *Judson v. Peoples Bank & Trust Co. of Westfield* (N. J.), 110 A. 2d 24, 36-37, holding that conscious, willful or intentional joint tortfeasors were within the ambit of the Act and reversed the judgment below. In sending the case back to the lower court, the Supreme Court took occasion to give its opinion as to the effect of settlement by a joint tortfeasor. The Court said that the equality aimed at by the Act could be realized in either of two ways: first, by the crediting upon the verdict against the others the settler's pro rata share, or by permitting the injured party to have judgment for his total damage less the consideration received in settlement, in which case the "judgment tortfeasor who pays in excess of his pro rata share may have his action against the settler for contribution." The Court rejected the second alternative and decided that the injured person must credit upon any verdict against other tortfeasors a settler's pro rata share of the amount of the verdict, saying: "The aim of the statute to make a settler responsible for his pro rata share is realized when the credit on the total damage is in the amount of that pro rata share, and provisions for a right of action against him at the hands of his co-tortfeasors were unnecessary." The case was again appealed, the decision being reported in 134 A. 2d 761, and the Court re-affirmed the stand it had taken in the first appeal. The settling defendants were assumed to be tortfeasors in fact in the first appeal and, in the second appeal, the Supreme Court noted that the trial court had found that they were tortfeasors in fact. Prior to the 1952 New Jersey statute, the Court of Errors and Appeals in *Brandstein v. Ironbound Transp. Co., supra,* 172 A. 580, 583, said that when a plaintiff settled with one of several joint tortfeasors, the amount of the settlement was to be credited upon the verdict against the others, on the reasoning that an injured person cannot receive more than one full satisfaction for his injury.

The first *Judson* case was followed by *Smootz v. Ienni* (N. J.), 117 A. 2d 675, a case wherein a judge of the Essex

County Court read the first Judson decision as deciding that an injured person who settles his case with one of several defendants will, for the purposes of the 1952 act, be deemed to have relieved the remaining solvent tortfeasors of the necessity of seeking contribution from the settler by requiring the crediting against the judgment of the settler's *pro rata* share before the judgment is finally entered. A summary judgment for the settler was granted. The decision was made in a contest between the sued defendant and the settler to whom the plaintiff had given a covenant not to sue, and who had been impleaded by the defendant. The plaintiff did not participate and the settler by his summary judgment obtained the relief he sought, as did the defendant by the *pro rata* reduction to be obtained; so there was no occasion for anyone to test the validity of the decision by appeal, and no one did.

*Klotz v. Lee* (Super. Ct. N. J.), *supra,* 114 A. 2d 746 was another case involving the same problem decided after the first *Judson* case. There Klotz had sued both Lee and Breish in tort. On the second day of the trial Klotz and Lee's insurance company, which was defending the case, entered into a settlement which in substance was that the company would pay Klotz $12,500 in full settlement and satisfaction of his claim against Lee, regardless of the verdict of the jury, subject to the understanding that if the verdict were against both defendants, Klotz would not exact more than fifty per cent of the verdict from Breish or his insurer. The jury returned a verdict in Lee's favor, establishing him not to be a tortfeasor, and against Breish for $35,000. The trial court subsequently reduced the plaintiff's verdict by $12,500, and the case was affirmed. The Court said: "The public policy objective of the Brandstein rule, that there should be only a single satisfaction for the same injury, was fully served here by the adjustment of the jury verdict in favor of plaintiff to the extent of the payment by Lee's insurance company, as soon as the payment was made." A petition for appeal to the Supreme Court of New Jersey was denied. *Klotz v. Breish* (Supreme Ct. N. J.), 116 A. 2d 829. A subsequent appeal was sought to be taken as of right on constitutional conten-

tions, which is reported, *sub nom. Klotz v. Lee,* 121 A. 2d 369. The Supreme Court of New Jersey discussed the various facets of, and contentions in the case, including the crediting of the settlement amount against the jury's verdict, and dismissed the appeal as presenting no constitutional issue.

Essentially on the decisions we have discussed, we must decide what we think the New Jersey courts would say its law is on the facts of the case before us.

The 1952 statute did not create a new liability in tort; it merely created a right to contribution among those who were liable in tort before. By its express definition, a joint tortfeasor, is one of two or more persons *liable* in tort for the same injury. Under the New Jersey cases, contribution cannot be exacted from one not proven to be liable to the injured person. *Guerriero v. U-Drive-It Co.* (Essex County Court of N. J.), 92 A. 2d 140, 142;[2] *Sattelberger v. Telep* (Supreme Ct. N. J.), 102 A. 2d 577, 583; *Mijon v. Acquaire* (Super. Ct. N. J.), 144 A. 2d 161, 168.[3] In the first *Judson* case the Court, by its reference to their activities, clearly assumed that the settling defendants were in fact tortfeasors and the trial court found them so to be, as the second *Judson* case notes. In the *Smootz* case, the settler in essence admitted that he was a tortfeasor. We have been furnished the briefs in the case and in them are statements tantamount to acknowledgments that the settler had been negligent.

We have found no case in New Jersey in which the one

---

**2.** "The statute by its terms makes the first requirement for joinder that the person sought to be joined is one *'liable in tort'* for the injury or damage to the plaintiff. This statute, of course, has only been effective in New Jersey since June 18, 1952, and apparently there has been no reported opinion on the same at this time. Nonetheless, the Legislature by this statute imposed a strict test—that *there must be liability in tort,* before the statute can become operative. This, of course, depends upon substantive law as it exists. In other words, this new statute does not create causes of action, that is, liability in tort, where it did not exist before. It merely creates a right to contribution among those who were liable in tort before."

**3.** "To be entitled to any relief at this state, the party asserting it must allege and prove that the party against whom he makes it is a joint tortfeasor within the meaning of the act."

paying a settlement had not been shown to have been negligent in fact or had not conceded his negligence, other than *Klotz v. Lee, supra*. That case would seem to stand for the proposition, with at least the implicit approval of the Supreme Court of New Jersey, that if one paying a settlement is established not to be a tortfeasor, the rule of the *Judson* cases is not applicable. We find this logical, since the *Judson* cases were dealing with proven tortfeasors, and their language must be read in this setting and within this limit of fact.

We think what was said in the *Brandstein* case is still applicable in New Jersey where one liable potentially, but not in fact, makes a settlement. In such case, even though he is later proved to have been free of negligence and not liable to the injured person, he was not a volunteer in making the payment, and the payment was not a gratuity. Although a minority holds to the contrary, the majority view is that whether or not the person released was in fact a joint tortfeasor, the amount paid for the release or covenant not to sue must reduce *pro tanto* the injured person's judgment against another. Prosser, *Law of Torts,* 2nd Ed., Sec. 46, p. 246; 106 Pa. L. R. 311, 313; *Holland v. Southern Public Utilities Co.* (N. C.), 180 S. E. 592, and cases cited; *Jacobsen v. Woerner* (Kan.), *supra,* 89 P. 2d 24, and cases cited. The reference to the *Brandstein* rule of public policy that there can be but one full satisfaction for the same injury in the *Klotz* case, (which was dealing with a settler not liable in fact to the injured person and which held a *pro tanto* reduction was required) leads us to believe that the *Brandstein* rule survives the 1952 statute and the *Judson* cases, in instances in which settlers proven not to have been liable to the injured person are concerned.

The result is, we think, that in New Jersey, a settlement with one in fact a tortfeasor brings about a *pro rata* reduction in a judgment against the other joint tortfeasor, and a settlement with one later proven not to have been a tortfeasor requires a *pro tanto* reduction in the judgment against the tortfeasor. The result fits the policy of, and the ends desired by, both *Brandstein* and *Judson,* for if the settler was liable the automatic *pro rata* reduction eliminates the need

for contribution, and if the settler is proven not to have been liable, the *pro tanto* reduction holds the recovery to the full damage suffered, and no more, and there can be no contribution because the settler is not a joint tortfeasor. Collusive settlements would not be promoted in either case.

We think there was no prejudicial error in the charge of the court on the burden of proof. The appellants' complaint on this score, and their exception, was that the charge was so general that the jury may have gotten the impression that the burden of proof was on the appellants to show the presence of flares, whereas it was actually on Egyud to show there were no flares, as well as that under the charge the jury might think appellants had the burden of proof of showing that Trainor's negligence was the sole cause of the accident. It was never claimed that the driver of the disabled tractor-trailer had with him, or put in place, any lights or flares as required by the New Jersey statute which was submitted to the jury in the charge, so that the argument of the appellants on that point is without substance. The court charged the jury that the burden was always on Egyud to sustain those facts on which his case rested and that the same burden rested on the appellants as to facts they attempted to prove by affirmative evidence. Since appellants were the ones who would have benefited by an automatic fifty per cent reduction in the amount they had to pay, had the jury determined that Trainor had been negligent, the burden would seem to have been on them to show him negligent. We think the charge might have been more explicit and particularized but that, on the whole, it was not prejudicial to appellants.

> *Case remanded for the crediting on the judgment of $6,500.00, and judgment, as reduced, affirmed, with costs.*