**Anna JENNINGS, Administratrix of the Estate of Stewart Earl Jennings, deceased, to her own Use and to the Use of Government Employees Insurance Company, Subrogee, and Government Employees Insurance Company, a body corporate**

v.

**UNITED STATES of America.**

Civ. No. 10305.

United States District Court
D. Maryland.

March 10, 1966.

Edward C. Bell, Hyattsville, Md., and Frederick J. Green, Jr., Baltimore, Md., for plaintiffs.

Thomas J. Kenney, U. S. Atty., and Ronald T. Osborn, Asst. U. S. Atty., for defendant.

NORTHROP, District Judge.

This case involves a claim by the estate of Stewart Earl Jennings for indemnity, or, in the alternative, for contribution from the United States. Both parties have moved for summary judgment. The court concludes that in this case there is no genuine dispute as to a material fact.

On January 23, 1956, an automobile operated by the deceased Jennings was involved in a collision with an automobile driven by one Porter. Jennings was killed in the accident.

Porter and two others involved in the accident brought suit against the estate of Jennings in Prince George's County. The cases were later removed to Montgomery County, where, after a day of trial, the parties entered into a settlement and a consent judgment. Pursuant thereto, Jennings' insurance carrier, Government Employees Insurance Company (hereafter referred to as GEICO), paid the plaintiffs in the Montgomery County actions a total of $19,000. Under the insurance contract, GEICO became subrogated to any right the estate of Jennings might have had to indemnity from a third party.

Meanwhile, the United States was named as defendant in three Federal Tort Claims actions brought by the administrators of Jennings' estate, by a passenger in his car, and by his survivors. The cases were tried by Judge Watkins in the United States District Court for the District of Maryland, and substantial verdicts were returned against the United States on the ground that the United States had been negligent because of the maintenance of a roadway faultily designed, which permitted water to accumulate and freeze on a road within its exclusive control. The icy condition of the road was held to have been a proximate cause of the accident, and Jennings was found to have been free of contributory negligence.

Urged on by a glimpse of the plaintiffs' victories over the United States in the Federal Tort Claims actions, GEICO, as subrogee, brought the instant action against the United States to recover the $19,000 paid in settlement of the Montgomery County cases.

The following table indicates the approximate dates on which the various cases arising from the accident in question were commenced:

| | |
|---|---|
| June–July 1956 | institution in Circuit Court for Prince George's County of actions by others involved in the accident against the estate of Jennings. |
| August 1956 | institution of suits by Jennings' executors, etc., against the United States. |
| December 1956 | state court cases removed to Circuit Court for Montgomery County. |
| March 1957 | consent decree and settlement of the Montgomery County cases. |
| January 1958 | institution of the present action for indemnity. |

---

### I. Indemnity

It is conceded that at no time prior to settlement did any person in any manner give formal notice to the United States of the institution of the state court actions, settlement negotiations, or a possible future claim of indemnity. As partial explanation for the failure to give notice, plaintiff's counsel candidly admitted at oral argument that at the time of the state court actions against Jennings and at the time of the Jennings' claims against the United States, no one thought there was "a snowball's chance in a very warm place" of holding the United States liable in any manner for the accident.

Although admitting that formal notice was never given, GEICO suggests (the court is not certain how seriously) that constructive notice may be inferred from the following: the Federal Tort Claims actions against the United States were instituted after the commencement of the state court actions; the institution of these actions gave the Government notice of the accident; a reasonable investigation of the accident would have disclosed that others were injured; the United States, therefore, should have anticipated the indemnity claim and participated in the negotiations.

The court cannot accept this reasoning. An explicit statement of an intention to hold the indemnitor liable is required before the consequences of failure to give notice may be avoided. Such a statement usually must be accompanied by an invitation to defend the action on behalf of the indemnitee, which is only reasonable if the indemnitor is to be bound by the litigation.

Perhaps the United States, had it received notice, would have joined informally in the defense; perhaps it would have conducted its own investigation of the claims of Porter and the others. At any rate, this court will not base its ruling upon speculation as to what might have happened had proper notice been given. The most important consequence of the lack of notice in this case is that the Government was never made aware of any settlement negotiations, and was unable to participate in such negotiations.

The principal dispute between the United States and GEICO is over what consequences flow from the failure to give notice. Both parties agree that because of the failure to give notice GEICO must prove (1) that the United States was negligent, and (2) the amount of damages suffered (or, that the amounts paid in settlement were reasonable). The parties have stipulated that the findings of Judge Watkins are binding in this case; thus, his finding that the United States was negligent is conclusive here,

and GEICO has met its burden on this issue. Further, the Government accepts the amounts paid to the plaintiffs in the Montgomery County cases as the measure of damages, and concedes that the settlement amounts were reasonable.

The controversy is concerned with what additional proof must be offered by GEICO. The United States claims that GEICO, having failed to give notice, must prove that the estate of Jennings was actually liable to the plaintiffs in the Montgomery County actions, and that this proof cannot be made because of Judge Watkins' finding that Jennings had not been contributorily negligent. GEICO, on the other hand, claims that it need show only that there was a strong likelihood that Jennings' estate would have been held liable had the state actions not been settled.

The position taken by GEICO would have this court pass on the judgment and competence of the attorneys involved in the state court actions. In general, such a task would call for little more than speculation and would be based on the particular reviewing judge's own view of the most likely outcome of the since-settled cases. The distaste for such a procedure is even greater in a case such as this, where the attorney's judgment would be pitted against a subsequent judicial determination that the indemnitee had not been negligent.

■ The court has found no case going as far as GEICO would urge. Rather, the cases support the Government's contention that, where there has been no notice and where there has been a settlement of the claim against the indemnitee, the indemnitee must prove its own actual liability in a subsequent action against the indemnitor.

Baltimore & Ohio R. Co. v. Howard Co. Com'rs, 111 Md. 176, 73 A. 656, 40 L.R.A.,N.S., 1172 (1909), involved a claim of indemnity by one who, like the present plaintiff, had given no notice to the prospective indemnitor. The original action had not been settled, but had gone to judgment against the indemnitee. The count, quoting from Elliott on Roads

and Streets, ruled against the position of GEICO:

" 'When a municipality has been compelled to pay damages for injuries sustained by reason of the wrongful acts of a third person which render its streets unsafe, it has a remedy over against him * * *. Where such a remedy over exists, it is customary and proper for the city to notify the original wrongdoer of the pendency of the action against it, and request him to come in and defend. The advantage to the city in so doing consists in the fact that he [the indemnitor] will then be concluded by the judgment as to the existence of the defect, the *liability of the corporation [the indemnitee] for the injury,* and the amount of damages occasioned by the defect. * * * The omission to give such notice does not affect the right of action [for indemnity], but simply imposes upon the city [the indemnitee] the burden of again litigating the matter and establishing the actionable facts.' " Id. at 187, 73 A. at 659. (Emphasis added.)

The quoted passage indicates that the court felt that an actual liability on the part of the indemnitee is one of the actionable facts.

As to the effect of a settlement, see Frank Martz Coach Co. v. Hudson Bus Transp. Co., 44 A.2d 488, 23 N.J.Misc. 342 (N.J.Sup.Ct.1945), where the court stated, as dicta:

"[E]ven though the settlement of the passengers' claims by the plaintiff [now seeking indemnity] appears to have been voluntary in the sense that the claims were not reduced to judgments, nevertheless, that fact does not defeat the right to indemnification. Voluntary payment merely varies the degree of proof needed to establish the liability of the indemnitor by casting upon the indemnitee the burden of proving (1) *that he was liable* * * *. Popkin Bros. v. Volk's Tire Co., 23 A.2d 162, 20 N.J.Misc. 1; Wise Shoes, Inc., v. Blatt, 107 Pa.Super. 473, 164 A. 89, 91; Colonial Motor Coach Cor-

poration v. New York Cent. R. Co., 131 Misc. 891, 900, 902, 228 N.Y.S. 508, 518–520 * * *." Id., 44 A.2d at 491. (Emphasis added.)

In 35 Ore.L.Rev. 54, 55 (1955), the author quotes from The Toledo, 122 F.2d 255, 257 (2d Cir. 1941), as follows:

"[I]n the absence of a notice to the indemnitor, 'an *actual liability* [shall] be sustained by the indemnitee, and if he settles a claim without a determination of the rights in question, he bears the risk of proving an *actual liability*, in the action over for indemnity.' * * *" (Emphasis added.)

In Hennessey, Torts: Indemnity & Contribution, The New Contribution Statute, 47 Mass.L.Q. 421, 424 (1962), the author summarizes the Massachusetts position as follows:

"Indemnity may be had even though the indemnitee settled the claim against him without waiting for suit to be brought or judgment obtained. Royal Paper Box Co. v. Munro & Church Co., 284 Mass. 446, 453 [188 N.E. 223]; Gray v. Boston Gas Light Co., 114 Mass. 149, 155; [Inhabitants of] Swansey v. Chance, 16 Gray 303; Berke Moore Co. Inc. v. Lumbermans Mutual Casualty Co., Mass.Adv.Sh. (1962) 1347, 1351 [345 Mass. 66, 185 N.E.2d 637]. In such a case *it must be shown that there was legal liability upon the indemnitee*, and that the settlement was in a reasonable amount. * * *" (Emphasis added.)

Likewise, in Crab Orchard Improvement Co. v. Chesapeake & Ohio Ry. Co., 115 F.2d 277 (4th Cir. 1940), the court stated at 282:

"A broad definition of indemnity is offered in section 76 of the Restatement of Restitution: 'A person who, in whole or in part, has discharged a duty which *is owed by him* but which as between himself and another should have been discharged by the other, is entitled to indemnity from the other * * *.' A scanning of this definition reveals that the indemnity principle is more limited in application than that

of subrogation. Not only must a benefit be conferred upon the defendant [indemnitor] by a discharge of his duty or obligation, but the discharge must have occurred under circumstances in which the plaintiff [indemnitee] was, at the same time, discharging a *personal obligation coextensive with that of the defendant*." (Emphasis added.)

The last sentence of the quoted portion of the opinion refers to the *actual liability* of the indemnitee, not merely to his fear of being held liable.

▮ The cases cited by the plaintiff in support of the claim that actual liability need not be shown are distinguishable. In Allied Mutual Casualty Corp. v. General Motors Corp., 279 F.2d 455 (10th Cir. 1960), Allied had paid one judgment and settled other claims arising from an automobile accident. The insurer, by subrogation, then sought reimbursement from the manufacturer and distributor of the insured's vehicle, claiming that the vehicle had been sold to the insured with defective brakes. As GEICO points out, the court in *Allied* stated at 460:

"With respect to the claims that were settled, Allied was not a volunteer, since its insured could have been adjudged liable to each such claimant for driving a car having defective brakes. * * *"

However, in *Allied* notice had been given to the prospective indemnitor. More importantly, however, the applicable law in *Allied* provided that the operation of an automobile with defective brakes is negligence per se (although the law allows certain extenuating factors to be presented to the jury), and there was therefore a basis for the insurer's having paid the claim. In *Allied*, there was no inconsistency such as is presented by GEICO. There, liability could have been imposed upon the insured by virtue of his operation of a vehicle with defective brakes; it is not inconsistent for him then to claim that the defect was caused by another from whom he now seeks indemnity. In the instant case, however, liability could only have been imposed on

the estate of Jennings upon a finding that Jennings had been negligent in the operation of his vehicle. The subsequent finding of Judge Watkins that Jennings was not negligent precludes the insurance company from now showing that Jennings was liable.

GEICO quotes the following passage from Popkin Bros., Inc. v. Volk's Tire Co., 23 A.2d 162, 164, 20 N.J.Misc. 1 (N.J.Sup.Ct.1941):

> "The fact that the payment by the plaintiff here to the injured person was a voluntary one in the sense that the claim was not reduced to judgment does not defeat the right of indemnification. If it appears that the party *was legally liable* and could have been compelled to satisfy the claim, that is sufficient. * * *" (Emphasis added.)

In that case, however, as in *Allied,* there was a basis for liability against the indemnitee that was not inconsistent with the indemnitee's later claim against the indemnitor:

> "[T]he plaintiff's [indemnitee] negligence consisted in its failure to properly inspect the instrument causing the damage * * * [while] the defendant's negligence consisted in its failure to properly attach the tire and rim, thereby furnishing an article defective for the use for which it was supplied." Id., 23 A.2d at 163.

Plaintiff also relies upon Steger v. Egyud, 219 Md. 331, 149 A.2d 762 (1959). That case, however, construing New Jersey law on a different point, is not apposite and is factually irrelevant.

■ This court concludes that GEICO must show that the estate of Jennings was actually liable to the plaintiffs in the Montgomery County actions if it is to recover. The court further concludes that GEICO is unable to make this showing.

The estate of Jennings could only have been held liable in the Montgomery County cases if Jennings had been found negligent in the operation of his automobile. The issue of Jennings' negligence was fully litigated before Judge Watkins, and Jennings was found *not* to have been negligent. Lack of negligence that caused or contributed to the accident was a necessary—and explicit—finding in the successful actions against the United States. That no act of negligence on the part of Jennings contributed to the accident in which he lost his life must now be taken as conclusively established, particularly where the parties have *stipulated* as to the effect of the rulings of Judge Watkins. This court will not permit Jennings now to prove that he *was* negligent.

In summary, settlement of a pending claim does not defeat a right to indemnity. However, where there has been a settlement, and where there has been *no notice* to the prospective indemnitor, the indemnitee must establish his actual liability to the party with whom he settled, not just that there was a reasonable—or even a very strong—chance that he would have been held liable. In light of the findings of Judge Watkins, and in light of the stipulation that such findings govern this action, it cannot now be shown that an act of negligence on the part of Jennings caused or contributed to the accident in which he was killed.

## II. Contribution

■ For GEICO to recover on the theory of contribution, it must establish that Jennings was a tortfeasor. Inasmuch as it has been judicially determined that Jennings was free of negligence, and in light of the agreed effect of that finding upon this action, Jennings was not a tortfeasor. Thus, there is no right to contribution.

It is, therefore, this 10th day of March, 1966, by the United States District Court for the District of Maryland, ordered that the motion of the United States for summary judgment be granted and that the motion of the plaintiff be denied.