136 N.J. Super. 512 (1975)
347 A.2d 16
TOWNSHIP OF WYCKOFF, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH SARNA AND CONTINENTAL CASUALTY COMPANY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1975.
Decided October 23, 1975.
*513 Before Judges CARTON, CRAHAY and HANDLER.
*514 Mr. Meneloas W. Toskos argued the cause for appellants (Messrs. Breslin & Schepisi, attorneys).
Mr. Marc N. Isenberg argued the cause for respondent (Mr. Philip C. Geibel, P.A., attorney).
The opinion of the court was delivered by CARTON, P.J.A.D.
Plaintiff Township of Wyckoff brought this action against defendants Sarna and Continental Casualty Company, its surety, for breach of a performance bond executed in connection with the approval of a subdivision development map. It raises important questions as to the nature and scope of the rights and obligations which the performance bond imposes on the parties to it.
A brief description of the background against which the present action arose is necessary to place the issues in proper focus. In January 1965 Pine Cliff Homes as principal and defendant Sarna and two others as coprincipals, along with defendant Continental Casualty Company as surety, executed the bond in question. The bond recited that the principal, Pine Cliff Homes, was engaged in improving a development known as "Suburban Woods," as shown on a certain map, and that the bond was given in connection with the development of that subdivision. The bond was conditioned on the obligation of the principal "well and truly," within three years from the date thereof, to "install all improvements in [the subdivision] in accordance with the * * * preliminary and final plats * * *" and to comply with necessary subdrainage required by the board of health in accordance with specifications of the Township of Wyckoff, and "in accordance with all applicable ordinances and laws, and to the satisfaction of the Township Engineer and the Township plans * * *."
Prior to the execution of the bond plaintiff township and defendant Sarna entered into an agreement with one Reginald S. Courtney and Rosemary, his wife, in and by which the Courtneys granted an easement across their property for the purpose of constructing a storm sewer required in connection *515 with the development. After the storm sewer was installed, the Courtneys brought an action against the township, Cedar Croft Estates (previously Pine Cliff Homes) and Sarna, alleging negligence on their part in the installation of the sewer. They recovered a judgment in the sum of $4,030. It appears that the judgment was originally entered against Sarna, but was later amended to substitute Cedar Croft Estates for him.
When Cedar Croft Estates defaulted in the payment of its pro rata share of the judgment, plaintiff township paid the entire amount and then obtained an assignment of the judgment from the Courtneys.
Thereupon plaintiff brought the present action against Sarna and Continental Casualty Company to recover the portion of the judgment which Cedar Croft Estates had defaulted on. The trial judge, sitting without a jury, found defendants liable to plaintiff under the terms of their performance bond and entered a judgment against them in the sum of $2,015. The judge also denied defendants' motion for a new trial grounded on the fact that Sarna's name had been stricken from the judgment in the negligence action.
The basis upon which plaintiff township seeks recovery in this action against Sarna and the surety, Continental, of one-half of the judgment against Sarna and the township in the negligence action is somewhat unclear. Two theories of liability appear to be advanced. The first is grounded on a claim for pro rata contribution from a joint tortfeasor. The other is predicated on the terms of the performance bond.
With respect to the contribution theory, if such right of contribution arose because of plaintiff's tort relationship with the other defendants in the negligence action, that right arose as a matter of law and not because of any obligations existing between the parties under the agreement relating to the approval of the subdivision (N.J.S.A. 2A:53A-1 et seq.). Moreover, any such right can apply, if at all, only to Sarna since Continental is not alleged to be one of the tortfeasors and was not a party to the negligence action.
*516 Thus, wholly apart from any rights which might exist in favor of the municipality by virtue of the agreement in the bond, if Sarna was in fact one of the judgment defendants in the negligence action, the judgment under review in this action might well stand as to him. The difficulty on this score is that the record indicates that the original negligence judgment was amended to eliminate his name as a judgment debtor and to substitute the name of another. Consequently, any basis for grounding a claim for contribution against him has been removed.
It follows that the judgment appealed from cannot be sustained as to either Sarna or Continental on this basis. This is not to say that a right of contribution may not exist in favor of the township against the other judgment tortfeasor. Any such right would have to be asserted in a separate action because the other judgment defendant was not a party to this action.
We consider now the second theory of liability and the basis on which the trial judge seems to have rested his determination. The thesis projected is that Sarna, as one of the coprincipals, and Continental, as surety, committed a breach of their joint agreement in the performance bond "well and truly" to install the improvements. The argument proceeds that the judgment in the negligence action based upon the negligent manner in which the pipe was installed, amounts to a demonstration that defendants failed to comply with the terms of their agreement in the bond.
It is argued that both the principal and surety thus became obligated to the municipality, not only for their undertaking to install the improvements properly, but also to indemnify the township for damages sustained by third parties as the result of such failure. The flaw in this theory is that it rests on a fundamental misconception of the nature and purpose of the performance bond as well as on an unwarranted interpretation of its terms.
As in the case of all contracts, the terms and provisions of a performance bond are to be construed with a *517 view to discovering and giving effect to the intention of the parties thereto. See Washington Construction Co., Inc. v. Spinella, 8 N.J. 212 (1951); Garfield Trust Co. v. Teichmann, 24 N.J. Super. 519, 526 (App. Div. 1953).
The agreement in question was executed by defendants Sarna and Continental as a condition for the approval of their subdivision map by the municipality. The governing body's authority to accept such a performance guarantee stemmed from specific provisions of the Municipal Planning Act. N.J.S.A. 40:55-1.22, in pertinent part, provides:
The governing body may accept adequate performance guarantees for the purpose of assuring improvements as provided in section twenty-one of this act. [N.J.S.A. 40:55-1.21] and section ten of the Official Map and Building Permit Act (1953) [N.J.S.A. 40: 55-1.39].
If the required improvements shall not have been installed in accordance with the performance guarantee, the obligor and surety, if any, shall be liable thereon to the municipality for the reasonable cost of the improvements not installed and upon the receipt of the proceeds thereof the municipality shall install such improvements.
N.J.S.A. 40:55-1.2 defines "performance guarantee" to mean "any security * * * including performance bonds, escrow agreements, and other similar collateral or surety agreements." See Legion Manor v. Wayne Tp., 49 N.J. 420, 424 (1967).
This provision of the Municipal Planning Act is similar to those of other states, most of whose enabling acts contain authority for the planning board either to require actual improvement of the property before final approval of the plat or to require that a bond covering the costs of such improvements be furnished the municipality. See 3 Rathkopf, The Law of Zoning and Planning (3 ed. 1972), § 8 at 71-79.
We note also its similarity in some respects to that required of a contractor who is awarded contracts for public improvements under N.J.S.A. 2A:44-143 et seq. In the *518 latter case the performance guarantee insures that if the general contractor fails to perform the terms of the contract, the public body will not be forced to spend money to pay the subcontractor or to pay for hiring new contractors to complete the construction. Compare Bayonne Bd. of Ed. v. Kolman, 111 N.J. Super. 585 (App. Div. 1970).
The purpose of the performance guarantee authorized by the Municipal Planning Act appears from the language employed. The stated purpose is to assure the installation of the required improvements, to render the obligor and the surety liable to the municipality for the reasonable cost of making such improvements if they are not installed properly, and in such case, to provide the means by which the municipality itself may remedy any deficiencies. See Legion Manor v. Wayne Tp., supra; J.D. Land Corp. v. Allen, 114 N.J. Super. 503, 509 (App. Div. 1971).
As the terms imply, the performance guarantee is a contract between the developer-obligor and its surety to guarantee completion of the stipulated improvements. Implicit in that agreement is an obligation on the part of the municipality to approve and accept them if they are properly installed, and a right to reject them if they are not and to compel correction of any defects. N.J.S.A. 40:55-1.22 was significantly amended in this respect in 1968 to provide a specific procedure for inspection and approval of the requirements upon completion and release of the obligor on the performance guarantee upon acceptance. One purpose of this amendment would seem to be to establish a method for determining when the obligations of the parties to the bond have ceased.
That the township itself considered the performance guarantee in this case simply as a contract to guarantee completion of the stipulated improvements is revealed by its own conduct. It appears that the township council, by formal resolution, gave final approval and acceptance to the subdivision some years before the institution of the present suit. *519 In addition, the township council on March 13, 1973, formally discharged Continental Casualty Company and the other parties to the bond by accepting a performance bond from another insurance company covering improvements described in the original bond. Cf. Washington Construction Co., Inc. v. Spinella, supra.
Nothing in the statute suggests that it was designed to insure the municipality against liability for its negligence in connection with the installation of such improvements or to indemnify it against negligence claims by third parties against it or the developer. Nor is there anything in the bond which lends itself to the interpretation that such was its purpose. In our view, to construe the bond thus would go beyond the statutory purpose and also add terms which the parties did not intend to include.
We note that in this case, although the municipality is the nominal party plaintiff, the real party in interest is the insurance carrier which defended the negligence action. In effect, the municipality's insurance carrier seeks to shift part or all of its responsibility as insurer to others whose relationship with the municipality arises solely out of a contract designed to protect the municipality against payment for the costs of certain improvements. Neither the statute nor the language of the performance guarantee warrants such a result.
Reversed.