643 P.2d 256

**Katherine M. KIRBY, individually, David M. Kirby, individually, and as next friend of Katherine M. Kirby and David M. Kirby, as special administrator of the estate of Mark S. Cummings, Plaintiffs-Appellees,**

v.

**NEW MEXICO STATE HIGHWAY DEPARTMENT, Defendant-Appellant.**

**No. 5101.**

Court of Appeals of New Mexico.

Jan. 19, 1982.

Rehearing Denied Feb. 2, 1982.

Certiorari Quashed March 29, 1982.

Jeffrey R. Brannen, Allen H. Brill, Montgomery & Andrews, P. A., Santa Fe, for defendant-appellant.

Steven L. Tucker, Jerry Wertheim, Jones, Gallegos, Snead & Wertheim, P. A., Santa Fe, for plaintiffs-appellees.

## OPINION

WALTERS, Chief Judge.

In a suit for the wrongful death of Mark Cummings and for personal injuries suffered by Katherine Kirby, the jury returned a verdict against the State Highway Department (SHD) for $55,000 in favor of Cummings's representative, and for a total of $17,207.09 for Kirby and her father/next friend. The trial court awarded plaintiffs' costs against SHD. It refused SHD's proposed form of judgment which provided for set-off on the jury verdicts to the extent of payments of $9,000 to Kirby and $22,500 for Cummings' death made by another alleged, but not sued, joint tortfeasor "pursuant to New Mexico Uniform Contribution Among Tortfeasors Act," and for which releases had been given by plaintiffs. SHD appeals the award of costs and denial of the set-offs. We affirm the allowance of costs and the Kirby judgment, and reverse, with instructions, the wrongful death award to Cummings's representative.

FACTS: Kirby and Cummings were passengers in a car driven by Joni Lynn Lanford. The car struck and broke through a guardrail on State Road 4. It rolled down a steep mountainside, severely injuring the occupants. As a result of their injuries, Mark Cummings and the driver died. This suit on behalf of Cummings and Kirby followed, the complaint alleging negligent "or wilful, wanton, reckless misconduct" of SHD in the "design, construction, maintenance, or for the existence" of the highway where the accident occurred.

The released "tortfeasor" was not joined in this action by either plaintiffs or defendant, but evidence was introduced to show that Lanford's insurer had paid an undisclosed amount of money for Cummings's death and Kirby's injuries in exchange for the personal representative's execution of the joint tortfeasor's releases. The trial court reserved for its decision, until after verdict, the issue of set-off to the extent of the settlement payments by Lanford's insurer. The judgment thereafter entered did not provide for set-off. Whether it should have is one of the questions to be answered in this appeal.

THE RELEASES: Section 41–3–4, N.M. S.A.1978, of the Contribution Among Tortfeasors Act provides:

A release by the injured person of one joint tortfeasor, *whether before or after judgment*, does not discharge the other tortfeasors unless the release so provides; but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid. (Our emphasis.)

The executed releases were nearly identical in their provisions, except for the names of the party plaintiffs, the amounts claimed and paid, and the non-inclusion of Paragraph 8 in the Cummings release. The documents were entitled "Release Pursuant to New Mexico Uniform Contribution Among Tortfeasors Act." The pertinent paragraphs were as follows:

1. In consideration of the sum of $_____ to [him, them] in hand paid by DONALD LANFORD through his insurance carrier, Western Farm Bureau Mutual Insurance Company, receipt of which is hereby acknowledged, the [special administrator] [parents and Katherine M. Kirby] do(es) by these presents forever release and discharge Donald Lanford, the father of Joni Lanford and the "named insured" under the involved Western Farm Bureau Mutual Insurance Company policy, and the estate of Joni Lanford, from any and all claims of every kind or character that are now or may hereafter be asserted by [special administrator] [parents and Katherine M. Kirby in her behalf], their heirs, successors and legal representatives, arising out of, caused by, or in any manner connected with, incident to, or attributable to the accident hereinabove described.

2. For the same consideration and as qualified below, [special administrator] [parents and Katherine M. Kirby] do(es) hereby reduce their claims for damages to the extent of the pro rata share of the

liability of the estate of Joni Landford, and the vicarious liability of Donald Lanford for [Mark S. Cummings's] [Katherine M. Kirby's] injuries and resulting damages recoverable against all other tortfeasors, or the consideration paid for this release, whichever is greater.

3. This release shall not only release Donald Lanford and the estate of Joni Lanford of liability to [special administrator] [parents and Katherine M. Kirby] for damages sustained as above described, but it shall also reduce [special administrator's] [parents and Katherine M. Kirby's] claim against all other tortfeasors to the extent that any such tortfeasor might be entitled to assert and claim contribution from Donald Lanford or the estate of Joni Lanford in connection with any judgment recovered by the [special administrator] [parents and Katherine M. Kirby] against such other tortfeasors arising out of said accident, but only to such extent.

4. The [special administrator] [parents and Katherine M. Kirby] reserve their claim and right to assert damages against all other tortfeasors, including the New Mexico Highway Department, to the extent that the damages of the [special administrator] [parents and Katherine M. Kirby] are payable by such tortfeasors in excess of the amount of contribution, if any, that might be required of Donald Lanford or the estate of Joni Lanford by such other tortfeasors.

5. Nothing herein contained shall be construed as an admission by Donald Lanford or the estate of Joni Lanford of any act of negligence or any other basis of liability on the part of Donald Lanford or Joni Lanford, their agents, servants and employees, which proximately caused or contributed to the accident and resulting injuries to [Mark S. Cummings] [Katherine M. Kirby], but this release is solely for the purpose of compromise and extinguishing the disputed claim of liability of Donald Lanford and the estate of Joni Lanford, their agents, servants and employees, to contribute to any other joint tortfeasor for any part of the dam-

age or injuries received by [Mark S. Cummings] [Katherine M. Kirby].

6. The [special administrator] [parents and Katherine M. Kirby] claim damages, individually and in [his, their] capacity as [special administrator] [parents and Katherine M. Kirby] of $_____ growing out of the separate, joint and/or concurrent acts of negligence, tortious conduct and other actionable conduct of Donald Lanford, Joni Lanford, the New Mexico Highway Department and other parties, and the acceptance of $_____ hereinabove set forth in settlement with the party released under paragraph 1 of these covenants is a compromise settlement of only that part of the [special administrator's] [parents and Katherine M. Kirby's] claim of damages for which Donald Lanford and Joni Lanford are or may be liable either to the [special administrator] [parents and Katherine M. Kirby] or by way of contribution to any other tortfeasors. The [special administrator] [parents and Katherine M. Kirby] acknowledge that the acceptance of the said consideration by them shall not be considered as an admission by them that their total damages are less than the full $_____ claimed to be owing by reason of [Mark S. Cummings's] [Katherine M. Kirby's] injuries.

7. By the execution of this release, it is not the intention of the [special administrator] [parents and Katherine M. Kirby] to reduce [his, their] claim for damages against the New Mexico Highway Department or other parties that may be liable individually or collectively for [Mark S. Cummings's] [Katherine M. Kirby's] injuries should it be determined by litigation that Donald Lanford and Joni Lanford are not joint tortfeasors.

8. [Kirby release only] The parents and Katherine M. Kirby hereby agree to indemnify Donald Lanford and Western Farm Bureau Mutual Insurance Company from any claims, costs or liability which do or may occur should parents and Katherine M. Kirby take any action to assert these same claims against Donald Lan-

ford, estate of Joni Lanford or Western Farm Bureau Mutual Insurance Company, after she attains her majority or is otherwise emancipated.

The parties have called to our attention the split of authority regarding the effect of a release from one who has not admitted or been judicially determined to be a joint tortfeasor. Appellee cites cases, which appear to be in the minority, for holding that establishment by admission or judicial proceedings that the releasee is a joint tortfeasor is necessary to permit an offset. *E.g., In re Seneca Trails, Inc.*, 7 B.R. 128 (Bkrtcy.W.D.Pa.1980); *Scalf v. Payne*, 583 S.W.2d 51 (Ark.1979); *Stone & Webster Eng. Corp. v. Heyl & Patterson, Inc.*, 395 A.2d 1359 (Pa.Super.1978); *Township of Wyckoff v. Sarna*, 136 N.J.Super. 512, 347 A.2d 16 (1975); *Turcotte v. Ford Motor Co.*, 494 F.2d 173 (1st Cir. 1974); *Mazer v. Lipshutz [Mazer II]*, 360 F.2d 275 (3d Cir. 1966); *Swigert v. Welk*, 213 Md. 613, 133 A.3d 428 (1957).

However, as appellant points out, *Mazer II, supra*, was reconsidered by the Circuit Court of Appeals in *Mazer v. Security Ins. Group*, 507 F.2d 1338 *[Mazer III]* (3d Cir. 1975). In doing so, the court acknowledged the error of *Mazer II* and the clarification of Pennsylvania law in a decision following *Davis v. Miller*, 385 Pa. 348, 123 A.2d 422 (1956), upon which *Mazer II* was based, citing *Brown v. City of Pittsburgh*, 409 Pa. 357, 186 A.2d 399 (1962). It also referred to its decision in *Griffin v. United States*, 500 F.2d 1059 (3d Cir. 1974). In *Griffin*, 12 P.S. § 2085 (the Pennsylvania statute identical to our § 41–3–4, *supra* ) was construed as effecting a complete waiver of the necessity for judicially determining the status of the released party as a joint tortfeasor in order for defendant to claim a set-off to the extent of that tortfeasor's payment when the release contained the provision for reduction referred to in the statute.

*Mazer III* noted that the policy stated by the Pennsylvania court in *Davis, supra*, was to prevent a *sole* tortfeasor from benefiting to the extent of a payment from a volunteer. New Mexico considers one a "volunteer" who " 'undertakes to do something which he is not legally nor morally bound to do, and which is not in pursuance or protection of any interest.' " *Bogart v. Hester*, 66 N.M. 311, 317, 347 P.2d 327 (1959). The releases in this case, as in *Mazer III* and *Griffin*, dispel any notion that Lanford's insurer was a "volunteer" in the sense that SHD was a "sole tortfeasor" who should not benefit from the provisions of the Tortfeasor Act; patently, the releases were taken "in pursuance" and "protection" of the interests of Lanford and his insurer.

The *Swigert* case cited by appellees and relied on in *Turcotte, supra*, depended also upon the *Davis, supra*, decision. In *Swigert*, a Maryland case, it was held that the person released must be established to be a tortfeasor before the amount of his payment can be applied to reduce a verdict against a sued tortfeasor. Two years later, in *Steger v. Egyud*, 219 Md. 331, 149 A.2d 762 (1959), interpreting New Jersey law rather than relying on Pennsylvania precedent, the Maryland court reversed its appraisal of the correctness of *Davis*. It said, at 140 A.2d 767, 768:

> Although a minority hold to the contrary, the majority view is that whether or not the person released was in fact a joint tortfeasor, the amount paid for the release or covenant not to sue must reduce pro tanto the injured person's judgment against another * * *.

The distinction between pro rata contribution and pro tanto reduction, in *Steger, supra*, is significant because New Jersey had omitted, in its shortened enacted version of the Uniform Contribution Among Tortfeasors Act, corollaries to our §§ 41–3–4 and –5, N.M.S.A.1978, which govern reduction and contribution among tortfeasors.

The reasoning of those courts requiring reduction of a verdict for damages in accordance with the terms of a release given to one who has not been sued is well-stated in *Layne v. United States*, 460 F.2d 409, 411 (9th Cir. 1972):

> While § 4 [same as § 41–3–4, N.M.S.A.] changed the common law in one respect

(i.e., by providing that release of one joint tortfeasor does not automatically release the other joint tortfeasors), it retained that part of the common law rule embodying the sound public policy of permitting a plaintiff to receive only the amount of his adjudged damages and no more, regardless of the source of the recovery. Since the principle is that there can be but one satisfaction for the same injury, whether or not the released party is in fact jointly liable with the defendant against whom a judgment is rendered is not relevant. In either case, to prevent recovery by plaintiff of more than his legitimate damages, "the amount paid for the release or covenant not to sue must reduce pro tanto the injured person's judgment against another. Prosser, Law of Torts, 2nd Ed., Sec. 46, p. 246; 109 Pa.L.R. 311, 313; *Holland v. Southern Public Utilities Co.*, 208 N.C. 289, 180 S.E. 592, and cases cited; *Jacobsen v. Woerner, supra*, 149 Kan. 598, 89 P.2d 24, and cases cited." *Steger v. Egyud*, 1959, 219 Md. 331, 149 A.2d 762, 767–768 (applying New Jersey law).

To require the United States to prove at trial that the released party was in fact a joint tortfeasor before § 4 of the Uniform Act can operate to cause a pro tanto reduction in the award equal to the amount recovered in the settlement would effectively thwart the major policy justifications for encouraging extra-judicial settlements—the disposition of claims without litigation, and the reduction and simplification of the issues requiring judicial determination. We do not think the language or intent of the Uniform Act requires such a result.

We have not been able to find (and we are not cited to) any New Mexico cases concerned with a release under the Tortfeasors Act wherein the party released had not been a party to the lawsuit and whose status as a joint tortfeasor had not been at least peripherally acknowledged in the lawsuit. *See, e.g., Herrera v. Uhl*, 80 N.M. 140, 452 P.2d 474 (1969); *Bailey v. Jeffries-Evans, Inc.*, 76 N.M. 278, 414 P.2d 503 (1966); *Garrison v. Navajo Freight Lines, Inc.*, 74 N.M. 238, 392 P.2d 580 (1964). Nevertheless, the releases in this case contain sufficient references to "any *other*" or "all *other* tortfeasors" (*see* paragraphs 2, 3, 4, 5, quoted above) that, despite the disclaimers of Paragraph 5 in each release, the admissions by Lanford and the insurer of a joint tortfeasor status cannot be denied. Moreover, the policy reasons stated in *Layne, supra*, together with the language of Justice Noble in *Garrison, supra*, 74 N.M. at pages 241–42, 392 P.2d 580, and the common understanding of the words in § 41–3–4, *supra*, compel us to hold that whether or not one who settles and receives a release is judicially determined to be a tortfeasor or clearly admits being one, absent any other countervailing considerations the effect of the release is to be governed by the provisions of the Contribution Among Tortfeasors Act. A release so worded "reduces the claim against the other tortfeasors in the amount of the consideration paid for the release" or in such amount or proportion as the release provides for reduction, if the total claim is greater than the consideration paid. Section 41–3–4, *supra*.

That portion of the trial court's judgment which declares that a settling tortfeasor's liability "must be admitted or judicially established in order for the New Mexico Uniform Contribution Among Tortfeasors Act to apply" is therefore erroneous in that respect.

We must, however, also give attention to § 41–3–5, N.M.S.A.1978. That section requires the released tortfeasor to contribute to another joint tortfeasor his pro-rata share of the damages awarded to plaintiffs, unless he obtained his release before his non-settling joint tortfeasor's right to contribution accrued *and* the release provides that the injured person reduces his claim against all other tortfeasors to the extent that the releasee would have been required to contribute his pro-rata share. The terms of both releases, under the statute, exonerate Lanford from contribution to the judgments obtained against SHD; at the same time, also in accordance with the provisions of § 41–3–5, *supra*, SHD is entitled to a

reduction of the damages awarded, unless other facts and circumstances warrant a different result in this specific instance.

*Keeping in mind the evidence which the jury heard regarding payments received for the releases given by plaintiffs, which releases recited plaintiffs' claim of Joni Lanford's negligence, the instructions on damages become crucial on the issue of offsets which SHD claims should have been allowed.*

*The Kirby Verdict :* The significant language of Instruction No. 23, which preceded the listing of elements of damages for which Katherine Kirby and her father might be compensated, instructed the jury that:

If you should decide in favor of the Plaintiff Katherine Kirby on the question of liability, you must then fix the amount of the following elements of damages proved by the Plaintiff *to have resulted from the negligence of the Defendant.*

If you should decide in favor of the Plaintiff David Kirby, individually, on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of the following elements of damages proved by the Plaintiff *to have resulted from the negligence of the Defendant.*

■ We do not have any indication in the record transcribed for appeal that any objections were made to this instruction. We have emphasized those portions of the instruction which require us to assume that the jury, having heard evidence of some payment received by reason of the Lanford's alleged negligence, and a release given for that purpose, nevertheless found Katherine and her father damaged to the extent of $9,000 and $2,207.09, respectively, *as a result of SHD's negligence.* We must presume that the jury understood and complied with the court's instructions and returned a verdict which assessed damages only for SHD's negligence. *Britton v. Boulden,* 87 N.M. 474, 535 P.2d 1325 (1975). Consequently, no right of offset or contribution can arise with respect to the verdict rendered on the basis of SHD's liability only.

■ *The Cummings Verdict :* Unlike the instruction on the Kirbys' recoverable damages, no mention whatever was made in Instruction 21, outlining the elements of damages in a wrongful death claim, to limiting liability for those elements "proved * * * to have resulted from the negligence of the Defendant [SHD]." It provided:

If you should decide for the plaintiff who represents the estate of Mark S. Cummings, deceased, on the question of liability you must then fix the amount of damage which will be equivalent to compensation, not for the loss of life itself, but rather for the loss of pecuniary benefits which might reasonably have been expected from the continued life of the deceased. In arriving at the amount of such pecuniary benefits, deduction must be made from gross earnings or earning capacity, if any, to cover income taxes, social security taxes and any other taxes or deductions which would be made or paid before the family could expect any pecuniary benefits from the deceased.

In fixing the amount of damages, allowance must be made for the fact that the pecuniary benefits reasonably to have been expected from the deceased are being aggregated and paid in cash and a reasonable discount should therefore be made for the earning power of such money.

In fixing damages the jury should consider the proof, if any, as to the age, earning capacity, health, habits and probable duration of life of the deceased but should not consider any of the following factors:

1.  The pain and suffering to the decedent, if any.

2.  The loss of decedent's society by the next of kin.

3.  The grief or sorrow of the next of kin.

4.  The property or wealth of the survivors or of the defendants.

Your verdict must be based upon evidence, not upon speculation, guess or con-

jecture; and, you must not permit the amount to be influenced by sympathy or prejudice.

Consequently, reading this instruction in the same manner as we have read Instruction 23, we must presume that the jury awarded $55,000 as the total amount of pecuniary benefits reasonably to have been expected from the continued life of Mark Cummings, in accordance with the instruction. The Lanford's pro-rata liability for that judgment, absent their earlier settlement, would have been $27,500. The release given by the Cummings Estate, however, protects SHD from the necessity to pay the entire judgment and seek contribution from the Lanfords, because the release specifically provides for a reduction of the Cummings claim against SHD "to the extent that [SHD] might be entitled to assert and claim contribution from Donald Lanford or the estate of Joni Lanford in connection with any judgment recovered by the special administrator against [SHD]." The intent of the parties is as clear here, we think, as in *Garrison, supra,* where the Supreme Court, through Justice Noble, said:

> Under express language of the Uniform Act, the effect of the release of one joint tortfeasor upon the injured person's claim against remaining tortfeasors is to reduce it in an amount at least as great as the consideration paid for the release, and to a larger amount if the release so provides. This provision [§ 41–3–5] prevents a double recovery by the injured person. However, the Uniform Act protects the right of a non-settling joint tortfeasor to collect contribution from the one released unless the release provides for a reduction, to the extent mentioned in § 24–1–14, N.M.S.A.1953, [now § 41–3–4, N.M.S.A.1978], of the damages recoverable from the remaining tortfeasors. 9 Uniform Laws Annotated 163; *Raughley v. Delaware Coach Co.,* 8 Terry 343, 47 Del. 343, 91 A.2d 245.

> The release must, of course, be read as a whole and the intent of the parties gathered from the entire instrument and not from separate portions. [Citations omitted.] When so read, we think it is

clear that plaintiff intended to and did by the language employed, provide for a reduction, to the extent of the pro rata share of [the settling tortfeasors], of plaintiff's damages recoverable against [the non-settling tortfeasors].

74 N.M. at 241, 392 P.2d 580.

The trial court should have granted SHD's request for offset on the Cummings verdict. *See Bailey v. Jeffries-Eaves, Inc.,* 76 N.M. 278, 414 P.2d 503 (1966). The $55,000 judgment in favor of the Cummings Estate and against SHD will be reduced to $27,500.

*Assessment of Costs* : SHD argues that costs may not be assessed against the State in a tort action because, under N.M.R.Civ.P. 54(d), N.M.S.A.1978, ". . . costs against the State, its officers and agencies shall be imposed only to the extent permitted by law." It claims there is no express statutory authorization for imposition of the costs awarded in this case, and points to the absence of any mention of liability of costs in the Tort Claims Act, §§ 41–4–1 et seq., N.M.S.A.1978.

Section 39–3–30, N.M.S.A.1978, provides in relevant part:

> In all civil actions or proceedings of any kind, the part prevailing shall recover his costs against the other party unless the court orders otherwise for good cause shown.

This statute originated in the Kearny Code of 1846 under the division entitled Costs, § 1. It was subsequently codified in C.L. 1865, ch. 45, § 1, and recodified, amended, compiled and recompiled over the intervening years until omitted by the compilers of the 1943 compilation of the New Mexico statutes because they felt it had been superseded by Supreme Court Rule 54(d) [now R.C.P. 54(d), N.M.S.A.1978]. In Laws 1966, ch. 28, § 58, the section was amended and recompiled as § 21–10–27, N.M.S.A.1953, the legislature adding the words "or Court of Appeals" and substituting "reviewing court" for "Supreme Court" in the second sentence of the statute. In expressly reinstating this statute and overriding the com-

piler's assumption that Rule 54(d) (first adopted in its present form, effective August 1, 1942, pursuant to Supreme Court order of March 20, 1942) was "deemed to supersede" the forerunners of § 21–10–27, the legislature gave express authority, without exception, to recovery of costs against any losing party.

We agree that the Tort Claims Act, *supra*, makes no provision for a party prevailing against the State to collect his costs. But we are not impressed that the legislature's silence, in that Act, is indicative of its intent to deny a successful complainant the recovery of his costs in a Tort Claims suit. In our view, the legislature as easily could have expressed such a limitation, if it intended to do so, as it did in providing in the tort Claims Act that no exemplary or punitive damages, or interest prior to judgment, could be included in any award. Section 41–4–19, subd. B, N.M.S.A.1978.

We must assume that the legislature was aware of existing statutory and common law, including Rule 54(d), *supra*, and § 39–3–30, when the Tort Claims Act was passed. We must also assume that the 1966 legislature was familiar with the compiler's annotation to Rule 54(d) when it deliberately returned § 39–3–30 [then § 21–10–27, 1953 Comp.] to the statute books. *Bettini v. City of Las Cruces*, 82 N.M. 633, 485 P.2d 967 (1971). Section 39–3–30 provides the statutory basis upon which Rule 54's reference to costs against the State may be allowed. The trial court's order in that respect was not error.

The judgment in favor of the Kirbys and the allowance of costs is affirmed. The judgment in favor of the Cummings Estate shall be reduced by $27,500.

IT IS SO ORDERED.

DONNELLY and NEAL, JJ., concur.